John MILLER, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 78–801.

United States District Court, D. Puerto Rico.

May 8, 1978.

Luis F. Colón, Hato Rey, P. R., for plaintiff.

Julio Morales Sanchez, U. S. Atty., Old San Juan, P. R., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

Plaintiff has brought this action against the United States of America and the Veterans Administration, alleging that his physical condition has deteriorated as a result of a negligent omission by a physician at the Veterans Administration Hospital. Jurisdiction is invoked pursuant to the provisions of the Federal Tort Claims Act. 28 U.S.C. 1346(b) and 28 U.S.C. 2671, et seq.

█ The Government has filed a "Motion and Memorandum to Dismiss" contending that the Court lacks jurisdiction to entertain this action because the administrative claim was not timely filed.[1]

In order to adequately dispose of this matter, we will proceed to summarize the relevant facts in this litigation.[2]

On February 18, 1975, Plaintiff was examined at the Veterans Administration Hospital by Dr. Cedeño, of the Hospital's staff, who ordered him to return on March 5, 1975 for a surgical intervention. On said date Plaintiff returned to the hospital, where Dr. Rosario, who was also employed by the hospital, limited his intervention to a review of Plaintiff's medical records. After waiting for approximately four hours, Plaintiff was discharged by Dr. Rosario, who intimated that Plaintiff's complaints had a psychosomatic origin. Thereafter, on March 18, 1975, Plaintiff underwent an exploratory laparotomy in a private hospital. The operation disclosed that he was suffering from hiatal hernia, moderate to severe esophagitis, an active duodenal ulcer and a gall bladder inflammation with fibrocystic duct. Consequently, Plaintiff underwent specialized corrective surgery on that same date. He had an excellent early post-operative recovery and was discharged on March 25, 1975.

Plaintiff returned to the private hospital on several occasions. On April 1, 1975 he was again admitted because of thrombophlebitis. He was discharged on April 9, 1975. Six days later he was readmitted because of wound infection, and was discharged on April 21, 1975. Plaintiff was again hospitalized in the private hospital from May 1 to May 8, and from May 31 to June 7, 1975, because of recurrent thrombophlebitis.

---

1. The movant also contends that the Veterans Administration is not a suable entity. We agree. The proper Defendant in actions under the Federal Tort Claims Act is the United States, 28 U.S.C. 2679, and the federal agency allegedly responsible for the tort is not amenable to suit. See, *Edelman v. Federal Housing Administration*, 382 F.2d 594 (C.A.2, 1967); *Lomax v. United States*, 155 F.Supp. 354 (D.C.Pa., 1957).

2. These facts appear from the documents submitted by both parties, as well as from the Complaint, the allegations of which must be taken as true for purposes of the instant Motion. *Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964).

Plaintiff instituted his claim with the Veterans Administration on June 1, 1977.

The gist of the complaint is that the Veterans Administration Hospital was negligent by making an incorrect diagnosis and not providing for surgery. It is alleged that such omission resulted in a deterioration of Plaintiff's condition and would have resulted in death had he not sought private medical assistance.

Defendant argues that Plaintiff's claim accrued at the time of the operation of March 18, 1975, when Plaintiff's real condition was discovered and made known to him. Therefore, the proposition is advanced that more than two years had elapsed when Plaintiff filed his administrative claim on June, 1977.

Plaintiff retorts that his action accrued on June 7, 1975, the date of his final discharge from the private hospital, which was less than two years before the date of the administrative claim. Plaintiff bases this contention on the asserted applicability to this case of the "continuous treatment" doctrine first expounded in *Kossick v. United States*, 330 F.2d 933 (C.A.2, 1964), cert. den. 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44.

We will now examine the legal framework against which the present matter shall be analyzed. 28 U.S.C. 2401(b) provides in its pertinent part:

"A tort claim against the United States shall be *forever barred* unless it is presented in writing to the appropriate Federal agency *within two years after such claim accrues* . . . ." (Emphasis added).

It is well established that in cases like the one at bar, the claim accrues "when [the injured person] discovered, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice." [3] *Quinton v. United States*, 304 F.2d 234, 240 (C.A.5, 1962); see also, *Casias v. United States*, 532 F.2d 1339 (C.A.10, 1976); *Dulaine v. United States*, 371 F.2d 824 (C.A.9, 1967), cert. den. 387 U.S. 920, 87 S.Ct. 2034, 18 L.Ed.2d 973.

It is clear to us that, since the month of March of 1975, Plaintiff could be charged with the knowledge that the mistaken diagnosis of Dr. Del Rosario could constitute malpractice. The surgical intervention of March 18, 1975 unequivocally disclosed a gamut of maladies which had not been uncovered by the Government physicians. Undoubtedly, said operation would have led a reasonable man to believe, as Plaintiff was concededly led to believe,[4] that he had been negligently treated at the Veterans Administration. Cf. *Dulaine v. United States*, supra. As stated in *Reilly v. United States*, 513 F.2d 147 (C.A.8, 1975):

"[W]hen the facts [become] so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations [begins] to run against the [Plaintiff's] cause of action." *Id.*, at 150.

Plaintiff attempts to have us circumvent the clear Congressional mandate envisaged in 28 U.S.C. 2401(b) by arguing that the two year period did not begin to run until June 7, 1975, because he had been receiving "continuous treatment" up to that date. We find no merit in this contention.

In *Kossick v. United States*, supra, the "continuous treatment" doctrine was set forth as follows:

"A claim for malpractice does not 'accrue' so long as the plaintiff is under continuous treatment for the ailment as to which

**3.** This federal principle precisely mirrors the law of Puerto Rico, as set forth in 31 L.P.R.A. 5298, which is applicable to this matter by virtue of the lex loci rule followed by our Circuit. *Hau v. United States*, 575 F.2d 1000, 1002 (C.A.1, 1978).

**4.** Plaintiff makes no attempt to deny that he had acquired such knowledge on March 18, 1978, and has thus failed to establish the absence of a reasonable suspicion of negligence on that date. *Kubrick v. United States*, 435 F.Supp. 166 (D.C.Pa., 1977).

the malpractice occurred or for the malpractice itself." *Id.*, at p. 934.

The rationale for the rule advanced by Plaintiff is the protection of the confidential physician-patient relationship, *Brown v. United States*, 353 F.2d 578, 580 (C.A.9, 1965); as well as the fear that the treating physician, "knowing of his actionable mistake, might be able to conceal it from his patient or continuously to lull the patient into failing to institute suit within the ordinarily permissible time period." *Ashley v. United States*, 413 F.2d 490, 493 (C.A.9, 1969); see also, *Ciccarone v. United States*, 486 F.2d 253, 256 (C.A.3, 1973).

 The justifications behind this exceptive doctrine are completely inapposite to the facts of this case. The "treatment" received by Plaintiff was not continuous by the same doctor (or his privy) or the same hospital for the required period. Absent these requirements, we are constrained to conclude that the continuous treatment rule has no place in the framework of the instant case. See *Camire v. United States*, 535 F.2d 749 (C.A.2, 1976); *Brown v. United States*, supra; *Ciccarone v. United States*, supra. All the elements which would have led a reasonable man to believe that he had been subject to malpractice were extant in March of 1975. Even if we assume that Plaintiff did not get a completely clear picture of his physical ailments until the date of his final discharge from the private hospital, the Court is convinced that he had acquired a sufficient knowledge of Defendant's negligence more than two years before the institution of the administrative claim.[5] The running of the statute of limitations does not await determination of the full extent of the injury, *Portis v. United States*, 483 F.2d 670, 672 (C.A.4, 1973), and one who knows that he has suffered damage from medical malpractice is not entitled

to postpone the filing of a claim until the full extent of the damage is ascertained. *Ashley v. United States*, 413 F.2d 490, 493 (C.A.9, 1969).

In view of the foregoing, this Court finds that Plaintiff's administrative claim, instituted on June 1, 1977, was filed outside the two-year period established by Congress. Wherefore, Defendant's Motion is granted and this case is hereby DISMISSED.

The Clerk of the Court shall enter Judgment in accordance with this Opinion.

IT IS SO ORDERED.

---

**5.** Plaintiff asserts that the time-bar defense was never mentioned by the Government as a reason for the denial of the administrative claim. However, the two-year period contained in 28 U.S.C. 2401(b) is jurisdictional, *Powers v. United States*, 390 F.2d 602 (C.A.9, 1968), and is not susceptible to waiver or estoppel. *Pringle v. United States*, 419 F.Supp. 289 (D.C.S.C., 1976); *Binn v. United States*, 389 F.Supp. 988 (D.C.Wis., 1975).