Humberto ROBINSON, by Jane Robinson, Legal
Guardian, and Jane Robinson, Respondents,

v.

MOUNT SINAI MEDICAL CENTER, a domestic
corporation, Wisconsin Health Care Liability
Insurance Plan, and Patients Compensation
Fund, Appellants-Petitioners.

Supreme Court

*No. 84-2301. Argued January 5, 1987.—Decided April 1, 1987.*

(Also reported in 402 N.W.2d 711.)

1

For the appellants-petitioners there were briefs by *Irving W. Zirbel, Kathleen E. Bonville* and *Zirbel, Howard & Malone, S.C.,* Milwaukee, and oral argument by *Kathleen E. Bonville.*

For the respondent there was a brief by *Leonard V. Brady,* Milwaukee, and oral argument by *Thomas P. Tofte,* Racine.

DAY, J. This is a review of a decision of the court of appeals, *Robinson v. Mt. Sinai Medical Center,* 127 Wis. 2d 285, 379 N.W.2d 326 (Ct. App. 1985), affirming an order of the circuit court for Milwaukee county, Honorable Marvin C. Holz, denying a defense motion for summary judgment. The issue presented is whether the services rendered by successive health care providers constituted a "continuum of negligent treatment" such that a single cause of action against these parties arose and the applicable statute of limitations did not begin to run until the last negligent act occurred.

We hold that, under the facts as alleged by Plaintiff, the services rendered by the health care providers can be properly characterized as a "continuum of negligent treatment" within the meaning of that phrase as explained in *Tamminen v. Aetna Casualty & Surety Co.,* 109 Wis. 2d 536, 327 N.W.2d 55 (1982). We therefore hold that Plaintiff's claim against

Defendants was timely brought.[1] We affirm the decision of the court of appeals upholding the denial of summary judgment.

On January 20, 1979, Humberto Robinson (Plaintiff), sixteen years old, came to the Mount Sinai Medical Center (Mount Sinai) emergency room and was examined by a resident. The Plaintiff complained of having a toothache and a frontal headache. He had been vomiting for five days, his right eye was swollen and caused him pain over the right temporal area, and

---

[1] The statute of limitations in effect at the time of this medical malpractice claim was three years. Two statutory sections are pertinent. Section 893.235, Stats., 1977 provides:

"**Section 893.235. Health Care Providers; Minors Actions.** Any person under the age of 18, who is not under disability by reason of insanity, developmental disability or imprisonment, shall bring an action to recover damages for injuries to the person arising from any treatment or operation performed by, or for any omission by, a person who is licensed, certified, registered or authorized to practice as a health care provider under state law within the time limitation under s. 893.205(1) or by the time that person reaches the age of 10 years, whichever is later. That action shall be brought by the parent, guardian or other person having custody of the minor within the time limit set forth in this section."

Section 893.205(1), Stats. 1977 provides:

"**893.205. Within 3 years.** Within 3 years: "(1) An action to recover damages for injuries to the person for such injuries sustained on and after July 1, 1955, unless notice in writing as provided in s. 330.19(5), 1955 statutes, was served prior to July 1, 1959, in which event s. 330.19(5), 1955 statutes, shall apply. But no action to recover damages for injuries to the person, received without this state, shall be brought in any court in this state when such action is barred by any statute of limitations of actions of the state or country in which such injury was received unless the person so injured shall, at the time of such injury, have been a resident of this state."

his right cheek was swollen. In addition, he was suffering from chills and fever. The resident allegedly misdiagnosed the problem. An oral medication was prescribed and the Plaintiff was instructed to return to the primary care clinic in two weeks.

The Plaintiff's condition worsened, and he returned to Mount Sinai on January 23, 1979, with his right eye swollen shut. On this occasion he was examined by a Dr. Mary Lynn Ryan, who was on staff at Mount Sinai and Milwaukee Children's Hospital (Children's). Dr. Ryan admitted Plaintiff to Children's and remained his attending physician throughout his stay.[2]

At Children's, Plaintiff underwent an allegedly negligent course of treatment, directed at stemming the spread of infection to the brain. These efforts were unsuccessful, and the spread of the infection caused an intra-cranial abscess. As a result of the alleged negligent treatment, the Plaintiff suffered severe brain damage. According to Plaintiffs' medical expert, Doctor Eric B. Zurbrugg, a specialist in pediatric neurology who provided a report on the Plaintiff which was included in papers submitted in opposition to the summary judgment motion, the Plaintiff is "thoroughly demented and a total invalid."

Four major neurosurgical procedures were performed on Plaintiff while he was at Children's. The purpose of these operations was to surgically drain infectious abscess material from different portions of the cranium. The last of these surgeries occurred on

---

[2]Progress notes on Plaintiff during his stay at Children's were entered on forms prepared for use by Mount Sinai, and were kept at Mount Sinai, although Plaintiff was not seen at Mount Sinai after the January 23, 1979, visit.

April 11, 1979, during which surgeons drained or aspirated a left frontal abscess and a right parasagittal abscess.

Other procedures were required, due to the continued progression of the infection and the unsuccessful attempts at drainage. The Plaintiff developed communicating hydrocephalus, which required the insertion of a shunt. The original placement and various modifications of the shunt took place in May and June of 1979. Plaintiff eventually developed grand mal seizures in June of 1979. He was discharged from Children's on September 13, 1979, and removed to the Sacred Heart Rehabilitation Hospital in Milwaukee.

A submission of controversy[3] was filed with the Patient's Compensation Panel (Panel) on April 7,

---

[3]In Wisconsin, at time of this case, medical malpractice claims had to proceed to a Patients Compensation Panel prior to any court action. *See,* ch. 655, Stats., 1977. Claimants had to file a "submission of controversy" with the director of state courts. Section 655.04(1), 1977.

Once there had been a filing, any applicable statute of limitations was thereby tolled. Section 655.04(6), Stats., 1977 provides:

> **"655.04 Patients' claims.** . . . (6) STATUTE OF LIMITA-
> TIONS. The filing of the submission of controversy shall toll any
> applicable statute of limitations, and such statute of limitations
> shall remain tolled until 30 days after the hearing panel issues its
> written decision, or the jurisdiction of the panel is otherwise
> terminated."

The statutory scheme dealing with medical malpractice was substantially revised by recent legislation. 1985 Wisconsin Act 340 replaces the Patient Compensation Panels with a "mediation system." Much of Chapter 655, including the provisions requiring a filing of a submission of controversy prior to any court action, has been repealed.

1982, naming both hospitals, Dr. Ryan (the admitting physician), and three additional doctors who performed surgery on Plaintiff at Children's. The Panel dismissed the controversy against Mount Sinai and one of the doctors, ruling that the alleged misdiagnosis took place on January 20, 1979, and that the three year statute of limitations had expired prior to the date the controversy was submitted.[4] The doctor that was dismissed was said to have had limited contact with the Plaintiff, once on January 25, 1979, and again on February 1, 1979. Thus, as against this doctor, the three year limitations period was stated to have expired prior to the filing of the submission of controversy.

Following Mount Sinai's dismissal, Humberto Robinson, by his mother and legal guardian, Jane Robinson, and Jane Robinson individually, commenced an action on May 2, 1984,[5] against Mount Sinai, its insurer, Wisconsin Health Care Liability Insurance Plan, and the Patient's Compensation Fund

---

[4]In a written decision dealing with the statute of limitation issue, dated April 17, 1984, the attorney-chairperson of the Panel recognized the applicability of *Tamminen:* "In the present case there was a continuing course of negligent acts, including negligent diagnosis, negligent treatment, and negligent follow-up by the different respondents in this case." Despite this general conclusion, the chairperson made individual determinations on the statute of limitations question for each of the named respondents. It was concluded that there was "no further intervention, negligent or otherwise" by Mount Sinai after January 23, 1979, and, therefore, the action against Mount Sinai "accrued on January 23, 1979, since a degree of injury had been already sustained at that time due to the negligent act of the Respondent."

[5]We note that the action was filed well within the thirty-day period during which the statute of limitations remained tolled following the Panel's decision. *See,* sec. 655.04(6), Stats., 1977.

(collectively, Mount Sinai) in circuit court.[6] Mount Sinai moved for summary judgment on statute of limitations grounds, and the motion was denied. The trial court focused on language in the *Tamminen* case which described a cause of action as a "factual unit, whose limits are determined by the time and sequence and unity of the happenings ...." *Tamminen,* 109 Wis. 2d at 556. The trial court also relied on *Ewing v. General Motors Corp.,* 70 Wis. 2d 962, 236 N.W.2d 200 (1975). The *Tamminen* court quoted the following from the *Ewing* opinion defining a "cause of action": "[t]here is only one cause of action if there is only one grouping of facts falling into a single unit or occurrence as a lay person would view them." 109 Wis. 2d at 557, quoting *Ewing,* 70 Wis. 2d at 967.

The trial court, relying on the foregoing, concluded that the claim was not barred by the statute of limitations. The trial court stated: "[i]t is not unreasonable for a lay person to view the whole course of treatment as a single occurrence. Different injuries or conditions did occur medically, but all resulted from the failure to cure an infection."

On appeal of this decision, the court of appeals affirmed the trial court, holding that the alleged negligence of the health care providers (both the hospitals and doctors) "constituted a continuum of negligence resulting in only one cause of action, which accrued at the end of the continuum." *Robinson,* 127 Wis. 2d at 288.

Mount Sinai argued to the court of appeals that *Tamminen* and the cases on which it relies, each

---

[6]The Plaintiff was not required to name the insurer or the Patients Compensation Fund in the submission of controversy with the Panel. *See, Tamminen,* 109 Wis. 2d at 561–562.

involved a single negligent actor, rather than, as here, different actors at separate institutions. The court of appeals stated: "Mount Sinai is factually correct, but nothing in *Tamminen's* language limits its holding to a situation with a single negligent actor. In fact, *Tamminen's* reliance on *Ewing* for its cause of action theory indicates that its holding should not be so limited." 127 Wis. 2d at 290.

Relying in large part on *Ewing,* the court of appeals held "that a single cause of action arises from a continuum of negligent treatment, whether by a single actor or by successive actors, that results in personal injury."[7] 127 Wis. 2d at 291.

---

[7]The court of appeals also concluded that the Plaintiffs were entitled to an extension of time within which to bring their action under sec. 893.33, Stats., 1977. This section provides:

"**893.33 Persons under disability.** If a person entitled to bring an action mentioned in this chapter, except actions for the recovery of a penalty or forfeiture or against a sheriff or other officer for an escape, or for the recovery of real property or the possession thereof be, at the time the cause of action accrued, either

"(1) Within the age of 18 years, except for actions against health care providers; or
"(2) Insane; or
"(3) Imprisoned on a criminal charge or in execution under sentence of a criminal court for a term less than his natural life, the time of such disability is not a part of the time limited for the commencement of the action, except that the period within which the action must be brought cannot be extended more than 5 years by any such disability, except infancy; nor can it be so extended in any case longer than one year after the disability ceases."

The court of appeals held that sec. 893.33, Stats., would apply if Plaintiffs could show that Humberto Robinson was insane when the cause of action accrued. *Robinson,* 127 Wis. 2d at 288. As noted, Humberto Robinson suffered severe brain damage. Plain-

Mount Sinai argues that the court of appeals improperly applied the *Tamminen* holding. It is argued that in *Tamminen,* one surgeon managed the Plaintiff's entire stay at the hospital, whereas in the instant case there are two separate "actors" or institutions involved. Mount Sinai maintains that its involvement consisted of a single act, and unlike the surgeon in *Tamminen,* it had "no continuing duty to provide medical services to the Plaintiff, because no physician-patient or hospital-patient relationship existed after January 23, 1979."

Mount Sinai argues that the *Tamminen* holding must be "confined to the situation where the continuous negligent treatment was rendered by the same group of doctors and/or the same hospital or clinic throughout the period of negligent treatment." The alleged act of negligence by Mount Sinai consisted of one act of the resident on January 20, 1979. Mount Sinai asserts that the single act of medical malpractice cannot constitute a continuum of negligent treatment.

Citing *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983) for the rule that a cause of action accrues when an action of negligence occurs with resulting injury and the injury is discovered, Mount Sinai argues that "[a]ll the necessary elements

tiffs consulted with a doctor specializing in pediatric neurology who examined Mr. Robinson and found that he met the criteria for dementia.

Since we resolve the statute of limitations question based on the *Tamminen* rule of continuous negligent treatment and the action falls within the three year statutory period, it is not necessary to reach the question of the applicability of sec. 893.33, Stats.

for accrual of the cause of action" were present on January 23, 1979, when it was clear the prescribed treatment order on January 20th was not working.

In the present case, if Mount Sinai's involvement with the Plaintiff is treated as a separate occurrence, then, since the last day of treatment was January 23, 1979, the three year statute of limitations expired three years after the cause of action accrued. Section 893.04, Stats. If Mount Sinai's involvement is treated as part of a continuing course of negligent treatment, under the *Tamminen* rule, then the cause of action against it did not accrue until the last negligent act. Under the facts, the last neurosurgical procedure was performed on Plaintiff on April 11, 1979. The submission of controversy was filed April 7, 1982. Thus, under the *Tamminen* rule, the three year statute would have been tolled prior to its expiration.

In *Tamminen,* Plaintiff filed a "submission of controversy" with the Patients Compensation Panel on October 30, 1978, claiming that health care services were negligently performed in connection with gastric bypass surgery which she underwent on November 4, 1975. The Panel issued a final order September 26, 1979, finding that the health care providers had not been negligent. The Plaintiff then commenced a circuit court action against the health care providers on January 11, 1980. The Defendants moved to dismiss the claim on statute of limitations grounds. The trial court granted summary judgment "on the theory that the statute of limitations barred any cause of action for any act of negligence which occurred prior to January 12, 1976." *Tamminen,* 109 Wis. 2d at 548. As explained by this court:

"This time computation ... was based upon the theory that each act of negligence specifically alleged in the complaint or set forth in the affidavits on summary judgment constituted a separate cause of action and, hence, that any of the causes of action which arose prior to January 12, 1976, were barred by the statute." *Tamminen,* 109 Wis. 2d at 548–549.

Plaintiff in *Tamminen* contended that one cause of action arose as a result of a continuous course of negligence from the time of admission to the hospital to the time of final discharge, *Id.* at 549, and Plaintiff urged this court to adopt the "continuous treatment doctrine."[8]

The *Tamminen* court stated that the continuous treatment doctrine had not and would not be adopted in Wisconsin. *Id.* at 553. In declining to adopt the continuous treatment doctrine, this court noted that under that doctrine "the mere fact that there has been continuous treatment, *whether negligent or not,* for a condition occasioned by a prior negligent act, is

---

[8]As stated in *Tamminen,* the rule of the doctrine of continuous treatment is that "if there has been negligence and the negligent health care provider continues to treat the plaintiff for the condition resulting from the negligence, the statute of limitations does not begin to run until the last day that the plaintiff was treated for that condition." *Tamminen,* 109 Wis. 2d at 552. "The rule as generally formulated is that if the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive." Louisell & Williams, *Medical Malpractice,* Vol. 1, 13–34 (1981).

sufficient to start the statute of limitations running only at the end of the course of treatment." *Id.* at 553–554. (Emphasis added.)

However, the *Tamminen* court, relying on cases from Oregon and Virginia, adopted the rule that "where there is a continuum of negligent medical care related to a single condition occasioned by negligence, there is but one cause of action; and if any act of negligence within that continuum falls within the period during which suit may be brought, the Plaintiff is not obliged to split his cause of action but may bring suit for the consequences of the entire course of conduct." *Id.* at 556. The *Tamminen* court concluded that the rationale expressed by the Oregon and Virginia courts in determining whether a continuum of negligent conduct exists is "identical" to the rationale utilized by this court in determining whether or not there is a single cause of action in misjoinder cases. *Id.* at 557.

The question here is, was the denial of summary judgment proper. Section 802.08(2), Stats. 1977, sets forth the court's duty where a motion for summary judgment is presented.[9]

■

The court must apply the summary judgment methodology in the same manner as the trial court. *Spring Green Farms v. Kersten,* 136 Wis. 2d 304, 401 N.W.2d 816 (1987). The first step in this methodology is

---

[9]Section 802.08(2), Stats., (1977) provides:

"**802.08. Summary judgment** .... (2) MOTION. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

to determine whether the Plaintiffs have stated a claim for relief. *Id.* As stated in *Kersten:*

> "In testing the sufficiency of a complaint, we take all facts pleaded by plaintiffs and all inferences which can reasonably be derived from those facts as true. Pleadings are to be liberally construed, with a view toward substantial justice to the parties. Sec. 802.02(6), Stats. The complaint should be dismissed as legally insufficient only if it is quite clear that under no circumstances can plaintiffs recover." *Id.*

If the court concludes a claim for relief has been stated, the court must determine whether any factual issues exist and whether the Defendant is entitled to judgment as a matter of law. *Id.* at 13.

The complaint sets forth a cause of action in negligence against the Defendant, Mount Sinai. The elements in a cause of action for negligence are: 1) a duty of care on the part of the defendant; 2) a breach of that duty; 3) a causal connection between the conduct and the injury; and 4) an actual loss or damage as a result of the injury. *Coffey v. Milwaukee,* 74 Wis. 2d 526, 631, 247 N.W.2d 132 (1976). Plaintiffs' complaint alleges that the resident who initially saw the Plaintiff at Mount Sinai was negligent in his diagnosis of the problem and treatment orders with respect to the original infection; that the resident's negligence was a substantial factor in the spread of the infection to the brain and in producing the resulting brain damage; that the standard of care evinced by the resident fell below that norm expected of members of the profession; and that permanent damage, causally related to the original misdiagnosis,

has resulted. Under the rules of liberal construction of pleadings, it is clear that Plaintiffs have set out a sufficient claim for relief, grounded in negligence, against Mount Sinai.

Mount Sinai, in its answer, raised the statute of limitations as an affirmative defense. Shortly after filing its answer, Mount Sinai brought the summary judgment motion, again relying on the statute of limitations argument.

We note that, as a general rule of pleading, plaintiffs are not required to anticipate defenses which defendants may raise and thus are not required to negative potential defenses in their complaint. *See,* 61A Am. Jur. 2d *Pleading* sec. 81 (1981). Wisconsin adheres to this general rule. It was stated in *Thomas v. Kells,* 53 Wis. 2d 141, 145, 191 N.W.2d 872 (1971): "While a complaint need not specifically deny the existence of any and all affirmative defense, it can, by inadvertence or otherwise, create or concede an affirmative defense fatal to its validity." (Footnote omitted.) *See, also, Falk v. Whitewater,* 65 Wis. 2d 83, 87, 221 N.W.2d 915 (1974). The statute of limitations is an affirmative defense, sec. 802.02(3), Stats.,[10] which

---

[10] "802.02 General rules of pleading.... (3) AFFIRMATIVE DEFENSES. In pleading to a preceding pleading, a party shall set forth affirmatively any matter constituting an avoidance or affirmative defense including but not limited to the following: accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of a condition subsequent, failure or want of consideration, failure to mitigate damages, fraud, illegality, immunity, incompetence, injury by fellow servants, laches, license, payment, release, res judicata, statute of frauds, statute of limitations,

Defendant bears the burden of raising. The affirmative defense of the statute of limitations must be raised in a pleading, or by a motion, or be deemed waived. *Milwaukee Co. v. Labor & Ind. Rev. Comm.,* 113 Wis. 2d 199, 206, 335 N.W.2d 412 (Ct. App. 1983). Plaintiffs were not required to address the statute of limitations defenses. Their complaint sufficiently stated a cause of action in negligence against Mount Sinai, and comported with the underlying goals of notice pleading.

Having determined that the complaint states a claim upon which relief may be granted, we now consider whether the pleadings or evidentiary matter show the existence of a disputed issue as to any material fact. *See, Grams v. Boss,* 97 Wis. 2d 332, 354, 294 N.W.2d 473 (1980).

Because we apply the *Tamminen* rule in this case, the date of the last alleged negligent treatment therefore becomes a disputed issue. Resolution of the disputed issue of fact is necessary before it can be determined whether the statute of limitations applies to bar Plaintiffs' action. If the involvement of Mount Sinai was treated as something disconnected from the treatment given at Children's, Defendants could show that since Mount Sinai last saw the Plaintiff on January 23, 1979, the cause of action arguably accrued at that time and the applicable three year limitations period thus would have expired prior to the filing of the submission of controversy.

superseding cause, and waiver. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall permit amendment of the pleading to conform to a proper designation. If an affirmative defense permitted to be raised by motion under s. 801.06(2) is so raised, it need not be set forth in a subsequent pleading."

In response to Mount Sinai's summary judgment motion, Plaintiffs make clear that they rely on *Tamminen* and intend to prove a continued course of negligence, obviating the statute of limitations problem. In proving their case, Plaintiffs must show that any negligence on the part of Children's occurred within three years prior to April 7, 1982, the date of filing. Thus, the accrual date of the cause of action is uncertain. When the action accrued depends upon a finding as to the date of the last negligent treatment. Such questions are best resolved at trial. As this court has stated:

> "As a general rule ... the existence of negligence is a question of fact which is to be decided by the jury .... This court has stated that summary judgment does not lend itself well to negligence questions and should be granted in actions based on negligence only in rare cases." *Ceplina v. South Milwaukee School Board,* 73 Wis. 2d 338, 342–343, 243 N.W.2d 183 (1976) (Footnotes omitted.)

In Plaintiffs' affidavit submitted on the summary judgment motion (filed September 24, 1984 and dated September 21, 1984; record at 7), it is stated that nine different "injurious conditions" progressively occurred to Robinson from January 20 to August 30, 1979; that these injuries resulted directly from the negligence of the Mount Sinai resident on January 20, 1979; and that these injuries were "separate, distinct, successive, *continuous* and progressive." (Emphasis added.)

Plaintiff's affidavit incorporates by reference the medical reports of Doctor Eric B. Zurbrugg, a physician specializing in pediatric neurology, analyzing Plaintiff's treatment and subsequent injuries. On the

18

basis of his review of over two thousand pages of medical records, Doctor Zurbrugg states that the Plaintiff suffered a "classical sequence" of infections, starting with a dental infection. This progressed to a right maxillary sinusitis, which in turn led to a right periorbital cellulitus and, finally, to an intra-cranial abscess. The original emergency room visit to Mount Sinai was identified as "clearly the start of the problem."

Doctor Zurbrugg stated that the Plaintiff's brain injury was "diverse and cumulative throughout his hospitalization." The series of four neurosurgial procedures each was "necessitated by the delay and apparent inadequacy of the previous ones." Doctor Zurbrugg summarized the course of treatment received by Plaintiff:

> "Humberto Robinson has suffered a massive and progressive neurologic injury, beginning with the inability of the resident at the Mt. Sinai Medical Center to recognize the seriousness of his periorbital cellulitis and to prescribe proper treatment and follow-up. His injury was compounded by an unconscionable delay in definitive neurosurgical management of his cerebral abscess once it was appreciated. This delay [was] compounded to an unknown degree by treatment of a drug known to interfere with host defense mechanism against bacterial infection, necessitated repeated neurosurgical procedures and a steadily deteriorating neurological picture."

Doctor Zurbrugg questioned the appropriateness of the use of drugs to combat the spreading infection:

> "The contribution of varying, but significant doses of the steroid, Decadron, to the inability of his host

19

defenses to contain the infection, is not clear. This drug is known to be associated with susceptibility to infection given in such doses as he received. He received this drug at least through June and in my opinion, other strategies to relieve cerebral edema should have been used because of the persistent failure to eradicate bacteria from this young man's brain."

We conclude that the record sets forth a case in which the *Tamminen* rule should apply. The facts as averred by Plaintiffs evince a situation "where there is a continuum of negligent medical care related to a single condition occasioned by negligence." *Tamminen,* 109 Wis. 2d at 556.

■

In reviewing the materials submitted on the summary judgment motion, we find that Plaintiffs, in setting forth statements asserting the continued negligence of Children's, raise an issue of fact as to when the last act of negligence occurred. The determination of when the last act of negligence occurs becomes significant only upon application of the ·*Tamminen* rule. Since the rule is applied and we assume the facts are as Plaintiffs aver, the Defendants cannot prevail on their statute of limitations argument. The existence of this disputed issue of fact thus makes the granting of summary judgment inappropriate. We need not proceed to the third step in the analysis to determine whether a party should receive judgment as a matter of law.

■

We are not persuaded by Mount Sinai's argument that the *Tamminen* rule of continuing course of negligence treatment is restricted to situations involving a

single negligent actor.[11] The continuum of negligent treatment doctrine is not, by its terms, limited to a single negligent actor. Defendant's paraphrasing of the rule at oral argument is inaccurate in that it implies such a limitation.[12] The determinative question in this case is whether there is one cause of action.

This court stated in *Ewing,* 70 Wis. 2d 962, 236 N.W.2d 200 (1975), that the test of whether there is

[11]Some courts have held that the "continuous treatment" doctrine does require a single negligent actor and will not apply to multiple actors. *See, e.g., Camire v. United States,* 535 F.2d 749 (2d Cir. 1976); *Miller v. United States,* 458 F. Supp. 363 (PR 1978); *see also, McDermott v. Torre,* 56 N.Y.2d 399, 437 N.E.2d 1108 (1982); *Coyne v. Bersani,* 94 A.D.2d 961, 463 N.Y.S.2d 967, aff'd. 61 N.Y.2d 939, 463 N.E.2d 372 (1984). However, other courts have applied the "continuous treatment" doctrine in cases involving multiple actors. *See, e.g., Fonda v. Paulsen,* 46 A.D.2d 540, 363 N.Y.S.2d 841 (1975); *Renda v. Frazer,* 100 Misc. 2d 511, 419 N.Y.S.2d 841 (1975); *Walpole v. Whitsell,* 100 Misc. 2d 508, 442 N.Y.S.2d 762 (1981); *Strong v. Pontiac General Hosp.,* 117 Mich. App. 143, 323 N.W.2d 629 (1982), *vacated on other grounds,* 419 Mich. 872, 347 N.W.2d 696 (1984). *See also, Peters v. Golds,* 366 F. Supp. 150 (E.D. Mich. 1973) (doctrine applied to professional corporation).

The foregoing cases arise in jurisdictions that have adopted the "continuous treatment" rule, which differs from the continuous *negligent* treatment doctrine adopted in Wisconsin. Therefore, we do not rely on decisions from these other jurisdictions for guidance in interpreting and applying the Wisconsin rule.

[12]At oral argument, defense counsel stated that the continuous negligent treatment doctrine provides:

"If a negligent health care provider continues to treat the patient for the same complaint the statute of limitations does not begin to run until the last day of the negligence or until the continuum of negligence has ended."

more than one cause of action is "whether there is more than one primary right sought to be enforced or one subject of controversy presented for adjudication." *Id.* at 966, quoting *Rogers v. Oconomowoc,* 16 Wis. 2d 621, 627, 115 N.W.2d 635 (1962). *Ewing* also explained that there is one cause of action "if there is only one grouping of facts falling into a single unit or occurrence as a lay person would view them." *Ewing,* 70 Wis. 2d at 967.

We agree with the court of appeals that in the instant case a lay person would reasonably view the facts as falling into a single unit or occurrence. *Robinson,* 127 Wis. 2d at 290–291. We also agree with the court of appeals that "there is only one subject of controversy (Humberto's brain damage), one primary right (his right to be free from medical malpractice) and, consequently, only one cause of action." *Id.* at 291.

We recognize that Wisconsin case law dealing with the concept of "successive torts" appears to limit the types of cases where injuries inflicted on a plaintiff by successive tortfeasors can be grouped together and characterized as forming a single cause of action. As representative of these types of cases, Mount Sinai cites *Voight v. Aetna Casualty & Surety Co.,* 80 Wis. 2d 376, 259 N.W.2d 85 (1977), a case involving medical malpractice.

In *Voight,* Plaintiff was diagnosed as having a tumor in her right hip by Doctor Frederick Gaenslen. Dr. Gaenslen performed surgery on the hip on April 5, 1971. During the surgery Dr. Gaenslen broke a fragment from the bone; he stapled the fragment back to the bone and finished the operation without removing the tumor.

Following the operation, the bone fragment and staple separated from the bone. In November, 1972, plaintiff consulted Doctor Harvey Barash, who surgically removed the bone fragment and staple, but not the tumor. The plaintiff returned to see Dr. Gaenslen in February, 1974, and the tumor was surgically removed.

The plaintiff commenced an action against Dr. Gaenslen, Columbia Hospital (the hospital at which Dr. Gaenslen performed his two operations), Dr. Barash, and their insurers. Defendants demurred to the action. The trial court sustained the demurrers and ordered that the three actions be separately brought. The plaintiff appealed, arguing that the trial court erred in holding that the complaint improperly united several causes of action. The *Voight* court stated that the case before it arose under sec. 263.04, Stats. 1973, which provided:

> **"263.04 Uniting causes of action.** The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly denominated legal or equitable or both. But the causes of action so united must affect all the parties to the action and not require different places of trial, and must be stated separately."

The court noted that the foregoing provision would have no application when a complaint states only one cause of action. *Voight,* 80 Wis. 2d at 382. The court then reviewed prior cases dealing with the definition of a single cause of action to determine if a single cause of action was stated.

The court looked at several "successive tortfeasor" cases, including *Caygill v. Ipsen,* 27 Wis. 2d 578, 135 N.W.2d 284 (1965) (two automobile accidents five

23

months apart), *Fitzwilliams v. O'Shaughnessy,* 40 Wis. 2d 123, 161 N.W.2d 242 (1968) (plaintiff injured in automobile accident and injured again in ambulance transporting her from first accident), and *Butzow v. Wausau Memorial Hospital,* 51 Wis. 2d 281, 187 N.W.2d 349 (1971) (plaintiff injured hip in sidewalk fall and again in fall from hospital bed while being treated for first fall). In these three cases, this court held that separate causes of action arose.

The *Voight* court stated that the foregoing cases "compel the conclusion that each of the operations involved in the instant action was a 'grouping of facts falling into a single unit or occurrence.'" *Voight,* 80 Wis. 2d at 383, quoting *Caygill,* 27 Wis. 2d at 582. The court also stated that the fact that there was only one injury alleged and that the alleged damages may be indivisible would not alter the conclusion that there were three separate causes of action. *Voight,* 80 Wis. 2d at 383.

Having determined that there were separate causes of action, the *Voight* court then proceeded to determine whether the causes were properly joined under sec. 263.04, Stats. 1973. To be properly joined, one of the things that need be shown was that the causes affect all the parties to the action. *Id.* at 384. The court noted that in order to make this showing, the defendants had to be either "joint tortfeasors or independent tortfeasors whose negligence concurs in time and place to produce a single injury." *Id.*

The *Voight* court stated that the case involved neither joint nor concurrent negligence. *Id.* The case was compared to *Butzow,* where the *Butzow* court stated:

24

"In the instant case we are not dealing with ... joint tort-feasors but successive tort-feasors whose negligence did not combine concurrently but sequentially in time to cause injury. The present case is one where a subsequent tort-feasor aggravates a pre-existing injury caused by the negligence of a prior tort-feasor." *Voight,* 80 Wis. 2d at 384–385, quoting *Butzow,* 51 Wis. 2d at 285.

Mount Sinai argues that *Voight,* and the cases cited therein, offer strong support for the conclusion that negligent acts by successive tortfeasors, even though they may be close in time and relate to the same injury, should not form the basis for a single cause of action. We conclude that *Voight* does not control the present case.

First, we note that *Voight* is a pre-*Tamminen* case. This court in *Tamminen* saw fit to adopt a new rule for cases involving negligent medical treatment. In the medical malpractice context special considerations arise. *Voight* interpreted sec. 263.04, Stats. 1973, dealing with the issue of when several causes of action could be united. This rule was repealed by supreme court order, 67 Wis. 2d 585, 758, effective January 1, 1976. In analyzing whether a single cause of action arose, the *Voight* court relied on other pre-*Tamminen* cases dealing with joinder questions under sec. 263.04. None of these cases involved solely medical malpractice issues related to treatment for a single condition.

Terms such as "successive tortfeasors" often have different meanings in different contexts. As Professor James Ghiardi has noted:

"The liability allocation to a 'successive tortfeasor' must be understood in relation to the meaning of 'joint tort' and 'joint tortfeasors.' The terms have

been surrounded by uncertainty and confusion. The attempts to define them and to propose tests for their existence have led to the conclusion that the terms may mean different things to different courts. ... The significance of a 'joint tort' depends on the particular legal issue or result that is involved. The issue may be whether there is a 'concert of action,' or it may be a question of joinder or joint and several liability. The issue could also involve judgment, satisfaction, release, or contribution and indemnity." Ghiardi, *Second Collision Law-Wisconsin,* 69 Marq. L. Rev. 1, 4 (1985).

The question considered in *Voight* was whether there was a misjoinder of causes of action. The *Voight* court made no special allowance for the fact that medical malpractice was involved. It was concluded, virtually without analysis, that each of plaintiff's hip operations constituted distinct wrongful acts and therefore separate causes of action.

The question in this case is whether Plaintiffs state facts sufficient to show that a continuum of negligent medical treatment exists. In assessing this, we rely on the concept of cause of action as analyzed in misjoinder cases.

The misjoinder cases define a cause of action as "a grouping of facts falling into a single unit or occurrence as a lay person would view them." *Caygill,* 27 Wis. 2d at 582. It is this central idea—whether there is a group of facts which, as viewed by a lay person, would fall into a single unit or occurrence—that the *Tamminen* court relied upon in explaining the new continuum of negligent treatment doctrine. This definition of a cause of action, by its terms, has no limits as to the number of acts or number of wrongdoers.

Yet, under the "cause of action" analysis as set out in cases such as *Caygill,* legal action taken against successive tortfeasors, by definition, cannot be brought as one cause of action. One of the key statements in *Caygill,* with respect to defining a "cause of action," is the following:

> "The operative facts, not the consequences, are determinative of a cause of action. 'It is the wrongful act and not the injury, that creates liability.'" *Caygill,* 27 Wis. 2d at 582, quoting *Northern Finance Corp. v. Midwest Commercial Credit Co.,* 59 S.D. 282, 285, 239 N.W. 242 (1931).

The *Caygill* court concluded: "The conduct of the defendants, Thompson and Ipsen, are two separate invasions of the right to be free from bodily harm; and, as a consequence, the accidents give rise to two separate causes of action." *Id.* at 583.

Thus, the *Caygill* court emphasized that each defendant performed a wrongful act; since there were two wrongful acts there were two causes of action. In relying on the single "cause of action" notion to aid our continuum of negligent treatment analysis, we are not concerned with the number of defendants or the number of wrongful acts. In this respect, the analysis in continuum of negligent medical treatment cases differs from the analysis in the misjoinder cases. Our concern is with the question whether a lay person could reasonably conclude that the facts fall within a single unit or occurrence. The implied assumption is that this will function as a test in helping to determine whether the events can be characterized as forming a *"continuum"* of negligent treatment.

In cases such as *Caygill, Fitzwilliams,* and *Butzow,* the facts are such that a lay person could view

them as not falling into a single unit. This conclusion is consistent with our conclusion that, in this case, a lay person would conclude the facts fall within a single unit or occurrence. The facts of the cases are different.

In the present case, the Plaintiff had an infection that was spreading and progressively getting worse. The fact that the resident at Mount Sinai and the various medical people at Children's treated the Plaintiff's infection was not coincidence or happenstance. It was by their conscious choice, not by accident.

██ This case falls within the ambit of the *Tamminen* rule because it meets the various conditions or elements of that rule: 1) There is a continuum of care. Reaching the conclusion that there is a continuum of care inevitably involves questions related to timing and the sequence of events. Here, there is a relatively uninterrupted chain of events as health care providers sought to address a spreading infection. This conclusion is strengthened by examining the sequence of events surrounding Plaintiff's transfer between hospitals. At the time of Plaintiff's second visit to Mount Sinai, Plaintiff was examined by Doctor Ryan. Doctor Ryan elected to admit Plaintiff to Children's Hospital, where she was also on staff. The move to Children's was accomplished by a doctor originally treating Plaintiff at Mount Sinai. The facts surrounding transfer show that treatment was uninterrupted. This case differs from *Voight,* where the plaintiff, although undergoing treatment which all related to her hip, waited over two years between the first and second treatment and over a year between the second and third treatment.

2) There is a continuum of *negligent* medical care. The element of continued negligence distinguishes Wisconsin's test from the continuous treatment rule of other jurisdictions. Here, taking the facts as averred by Plaintiff to be true, negligence continued from the time of the original misdiagnosis at Mount Sinai through the treatment at Children's.

3) The medical care related to a single condition. There is no question but that all the treatment was directed at stemming the spread of a progressive infection. This fact alone distinguishes the majority of the "successive tortfeasor" cases, most of which exhibit no connection between the tortfeasors as to their purpose for acting. Their sole connection is that they have inflicted some type of injury on the Plaintiff.

4) The precipitating factor in this series or "continuum" was the original misdiagnosis at the Mount Sinai emergency room. Had timely and appropriate intervention taken place upon Plaintiff's first visit, the infection may have been curtailed and further radical treatment, such as neurosurgery, made unnecessary. The spreading infection was thus "occasioned by negligence," and the continuum of negligent medical care all "related" to the treatment of the spreading infection.

The facts of this case thus fall squarely within the *Tamminen* rule. It is precisely this type of case that this court envisioned when it fashioned the continuum of negligent medical treatment rule.

We conclude that the course of conduct here, as phrased by the *Tamminen* court, constituted "a unitary episode as it is reasonably viewed." *Tamminen,* 109 Wis. 2d at 558.

We note that by concluding that the continuum of negligent treatment doctrine applies to this case and

that the action is therefore timely brought, we merely give plaintiffs the opportunity to prove their allegations at trial.

*By the Court.*—The decision of the court of appeals is affirmed.