Deborah E. WIEGERT and Terry S. Wiegert,
Plaintiffs-Appellants,

v.

Jerry W. GOLDBERG, M.D., Defendant-Respondent.

Court of Appeals

*No. 03–0891. Submitted on briefs August 22, 2003.—
Decided January 14, 2004.*

2004 WI App 28

(Also reported in 676 N.W.2d 522.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *David P. Lowe* and *Paul R. Jacquart* of *Jacquart & Lowe, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Randall J. Sandfort* of *Marshfield Clinic*, Marshfield.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J.   Deborah E. and Terry S. Wiegert appeal from an order granting Dr. Jerry W. Goldberg's motion for summary judgment. The Wiegerts contend

that the trial court erred when it concluded that the applicable statute of limitations barred the Wiegerts' claim against Dr. Goldberg for medical malpractice. We disagree and affirm the order of the trial court.

## FACTS

¶ 2. On November 24, 1997, Deborah Wiegert (Wiegert) was hospitalized at St. Joseph's Hospital in Sheboygan county with an undiagnosed inflammatory/autoimmune disorder that included symptoms of fatigue, pain in her extremities, and insomnia. While hospitalized, she saw Dr. Goldberg, who prescribed medication that provided relief of her symptoms. Following release from the hospital, Wiegert followed up with Dr. Goldberg by appointment on December 30, 1997, and then by phone in January and February 1998.

¶ 3. Wiegert's symptoms returned and she called Dr. Goldberg on March 18, 1998. Dr. Goldberg prescribed 30 mg. of Temazepam per day for thirty days without requiring an office appointment. Possible side effects of Temazepam include anxiety, insomnia, abuse and addiction, depression, disinhibition, and other mental and behavioral reactions.

¶ 4. On April 14, 1998, Wiegert called Dr. Goldberg's office for a refill of Temazepam. Dr. Goldberg did not speak to Wiegert, but provided her with prescriptions for three thirty-day refills of Temazepam. In April 1998, Wiegert's behavior started to change drastically. She experienced mood fluctuations, in addition to aggressive, argumentative, and unstable behavior that led to several interventions by local police. Wiegert made an appointment with Dr. Goldberg for May 12, 1998. Dr. Goldberg's notes from this appoint-

ment state that Wiegert's condition had improved, but make no reference to her use of Temazepam, and no mention of the behavioral problems Wiegert had been experiencing prior to the visit. The parties dispute whether Wiegert discussed her behavioral changes with Dr. Goldberg at the May 12 appointment, but for purposes of this appeal, Dr. Goldberg accepts her contention that she did.

¶ 5. After the May 12 appointment, Wiegert's condition deteriorated rapidly, and on June 16, 1998, Wiegert became manic and chased her husband's car through the streets of Sheboygan, ramming into it with her own vehicle.

¶ 6. Later that day, the police were called to the Wiegert home where Wiegert had stripped off her clothing and begun to cut her chest, breasts, arms, and legs with pieces of glass from a container she had broken. The police detained Wiegert and she was committed to Sheboygan Memorial Medical Center, where she stayed until June 18, 1998. The hospital psychiatrist informed Weigert that her abnormal behavior was probably caused by the Temazepam, and she stopped taking the drug.

¶ 7. The Wiegerts filed their claim of medical malpractice on June 14, 2001. Dr. Goldberg then moved for summary judgment on grounds that the Wiegerts' action was not timely brought under Wis. Stat. § 893.55 (2001–02).[1] Dr. Goldberg argued that the statute of limitations had run because the claim was not filed within three years of Dr. Goldberg's last negligent act on May 12, 1998, the date of Wiegert's final visit to Dr. Goldberg. The Wiegerts argued that the continuum of

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

negligent medical treatment doctrine extended Dr. Goldberg's negligence to at least June 18, 1998, because Dr. Goldberg negligently failed to monitor Wiegert during the course of her use of Temazepam. The trial court granted Dr. Goldberg's motion for summary judgment and found that no negligent act occurred after May 12, 1998. The Wiegerts appeal from the order for summary judgment.

## DISCUSSION

■

¶ 8. In reviewing a grant of summary judgment, an appellate court applies the standards set forth in WIS. STAT. § 802.08(2) in the same manner as the circuit court. *Hubbard v. Messer*, 2003 WI 145, ¶ 7, 267 Wis. 2d 92, 673 N.W.2d 676. Our methodology is as follows. We must first determine whether the complaint states a claim. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). If the plaintiff has stated a claim and the pleadings show the existence of factual issues, then we must examine whether the moving party has presented a defense that would defeat the claim. *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). If the defendant has made a prima facie case for summary judgment, the court examines the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to determine whether a genuine issue exists as to any material fact, or whether reasonable conflicting inferences may be drawn from undisputed facts, therefore requiring a trial. *See Green Spring Farms*, 136 Wis. 2d at 315.

■

¶ 9. Summary judgment is proper when no genuine issues of material fact exist and the moving party is

entitled to judgment as a matter of law. Wɪs. Sᴛᴀᴛ. § 802.08(2). We will reverse a decision granting summary judgment if either (1) the trial court incorrectly decided legal issues, or (2) material facts are in dispute. *Deminsky v. Arlington Plastics Mach.*, 2001 WI App 287, ¶ 9, 249 Wis. 2d 441, 638 N.W.2d 331, *aff'd,* 2003 WI 15, 259 Wis. 2d 587, 657 N.W.2d 411, *reconsideration denied,* 2003 WI 91, 262 Wis. 2d 505, 665 N.W.2d 378. Taking these in reverse order, we first scour the record to determine whether material facts are in dispute. All inferences drawn from the underlying facts are interpreted in the light most favorable to the nonmoving party; therefore, we consider the pleadings and affidavits in the light most favorable to the Wiegerts. *See Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980).

■

¶ 10. A claim for medical malpractice, like any claim for negligence, requires four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries or damages. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. The Wiegerts have alleged all elements required for a medical malpractice claim and Dr. Goldberg's answer is sufficient to join issue. Dr. Goldberg's motion for summary judgment provides a prima facie case based on the statutory time limits for medical malpractice claims proscribed by Wɪs. Sᴛᴀᴛ. § 893.55(1). The Wiegerts' response and accompanying affidavit assert that an issue of material fact does exist. Our analysis of the record, however, indicates that only a question of law remains.

¶ 11. The Wiegerts argue that "[b]y providing Mrs. Wiegert with a continuum of negligent care, including prescribing ninety days of medication with

dangerous side effects, Dr. Goldberg must accept a ninety day period of professional responsibility to monitor his patient." In support of their argument, the Wiegerts reference the affidavit of Peter R. Breggin, M.D. Dr. Breggin states:

> It is my opinion that Dr. Goldberg provided Mrs. Wiegert a continuum of substandard care that began on the date of his first temazepam prescription to her, March 18, 1998, and continued through and after June 18, 1998 because Dr. Goldberg was not monitoring her use of the drug or its effects during this unusually lengthy period of use.

Dr. Goldberg, for purposes of this appeal, does not dispute that a physician has a duty to monitor a patient who is taking medication such as Temazepam. Rather, Dr. Goldberg asserts that the last act of negligence could not have occurred later than May 12, 1998, Wiegert's final office visit. The Wiegerts point to the dispute over the last date of negligence as an issue of material fact, rendering summary judgment inappropriate.

¶ 12.   We disagree with the Wiegerts' attempt to recast the question of Dr. Goldberg's duty from a question of law to an issue of material fact. The issue before us is whether Dr. Goldberg's duty to monitor Wiegert was ongoing and constant through the full ninety-day prescription refill period. Whether a legal duty exists in a negligence case and the scope of that duty are questions of law. *See Gould v. Am. Family Mut. Ins. Co.*, 187 Wis. 2d 671, 675, 523 N.W.2d 295 (Ct. App. 1994), *rev'd on other grounds,* 198 Wis. 2d 450, 543 N.W.2d 282 (1996). Whether Dr. Goldberg's legal duty to monitor Wiegert existed until June 18, 1998, is, there-

fore, a question of law. Summary judgment is proper and will be upheld on review when only a question of law is presented. *Hubbard*, 267 Wis. 2d 92, ¶ 7.

¶ 13.   We now turn our attention to whether the trial court correctly decided the question of law. Dr. Goldberg asserts that the Wiegerts' claim is barred by the applicable statute of limitations. The Wiegerts and Dr. Goldberg agree that the applicable statute of limitations is WIS. STAT. § 893.55(1), which provides in relevant part:

> [A]n action to recover damages for injury arising from any treatment or operation performed by, or from any omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of:
>
> (a) Three years from the date of the injury, or
>
> (b) One year from the date the injury was discovered . . . .

¶ 14.   Under this statute, the date of Wiegert's injury triggers the beginning of the limitations period. A patient has either the three-year general time period or the one-year time period from the date of discovery, whichever is later, in which to file a claim. *See* Judicial Council Committee's Note, 1979, WIS. STAT. § 893.55(1). However, the Wiegerts base their medical malpractice claim on the continuum of negligent medical treatment doctrine. A continuum of negligent medical treatment occurs where an initial negligent act is followed by a chain of negligent medical care related to a single condition. *See Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 28–29, 402 N.W.2d 711 (1987).

¶ 15. To invoke the continuum of negligent medical treatment rule, a patient must show four elements: (1) a continuum of care, (2) a continuum of negligent medical care, (3) that the medical care was related to a single condition, and (4) that the precipitating factor in the continuum was the original negligent act. *Westphal v. E.I. du Pont de Nemours & Co., Inc.*, 192 Wis. 2d 347, 369–70, 531 N.W.2d 386 (Ct. App. 1995). For purposes of this appeal, the parties agree that: (1) Dr. Goldberg provided health care services to Wiegert; (2) he prescribed Temazepam on March 18, 1998, thirty tablets with no refills, and prescribed three refills on April 14, 1998; (3) as a result of his prescriptions, Temazepam was delivered to Wiegert on March 19, April 14 and May 11, 1998 (a total of ninety tablets); (4) Wiegert experienced mental and behavioral changes as a result of taking the Temazepam; and (5) there was no contact between Dr. Golberg and Wiegert after the May 12, 1998 office visit.

¶ 16. Establishing a prima facie claim under the continuum of negligent medical treatment rule does not relieve the Wiegerts of the requirement to file within the statutory time limit. Accordingly, we turn our attention to the question of when the Wiegerts' cause of action accrued. Our supreme court has held:

> A cause of action accrues only when the cause of action is complete; and where, as here, it is averred in the affidavits that the negligent acts of malpractice were continuous, the cause of action is not complete until the last date on which the malpractice occurred. If an action is timely brought in relationship to that last date, the entire cause of action is within the jurisdiction of the court.

*Tamminen v. Aetna Cas. & Sur. Co.*, 109 Wis. 2d 536, 559, 327 N.W.2d 55 (1982).

¶ 17.   The Wiegerts argue that *Tamminen* supports their position that Dr. Goldberg's duty to monitor Wiegert continued through June 18, 1998, and therefore the last negligent act occurred on June 18, 1998, when no monitoring took place. Our reading of *Tamminen* reveals no such conclusion. In that case, Tamminen sued her physician for negligent treatment with respect to surgical, medical, and hospital care in connection with a gastric bypass procedure performed on November 4, 1975. *Id.* at 539. Our supreme court held that Tamminen's cause of action accrued on March 30, 1976, the date of her final discharge from the hospital. *Id.* at 558–59. The court held that a series of negligent acts, which form a "single unit of negligent treatment," should constitute but one cause of action. *Id.* at 558. The *Tamminen* court was concerned that splitting what amounted to a single cause of action into discreet claims would allow "only a relatively insignificant portion of [a patient's] claim to be tried." *Id.* at 549. There is no language that guides us to create an ongoing and constant duty to monitor through some vague and indefinite period, during which prescriptions may or may not be filled.

¶ 18.   The Wiegerts also rely on *Robinson* to support their argument that Dr. Goldberg's final act of negligence occurred on the last date of the prescription period. In *Robinson*, the sixteen-year-old patient sought medical treatment for a toothache and headache at the Mount Sinai emergency room where he was seen by a hospital resident and the initial misdiagnoses of his condition occurred. *Robinson*, 137 Wis. 2d at 5–6. The resident gave Robinson oral medication and sent him home with instructions to follow up with his doctor in

two weeks. *Id.* at 6. Three days later, Robinson returned to the emergency room and was seen by a physician who then admitted him to Milwaukee Children's Hospital. *Id.* Four major neurosurgical procedures were performed on Robinson while at Children's Hospital. *Id.* Upon discharge from Children's Hospital, Robinson, described as "thoroughly demented and a total invalid," was transferred to Sacred Heart Rehabilitation Hospital. *Id.* at 6–7.

¶ 19. The Wiegerts point out that in *Robinson,* the "administration of the allegedly inappropriate drug into Robinson, accompanied by the alleged failure of Children's Hospital to consider other treatment options, an omission of care within three years of the date of filing, was enough to preserve the entire continuum of negligence for suit even though over three years had elapsed from the date of any negligent treatment by Mount Sinai." The *Robinson* case did include negligently prescribed medication, but further attempts at analogy fail. The *Robinson* court was reviewing the issue of whether services rendered by successive health care providers constituted a continuum of negligent medical treatment such that a single cause of action could arise. *Id.* at 4. *Robinson* does not instruct us that a physician's duty to monitor a patient continues through some vague and indefinite period, during which prescriptions may or may not be filled.

¶ 20. No case law supports the Wiegerts' position. The Wiegerts' contention would furthermore lead to an unreasonable result. If physicians have a constant and ongoing duty to monitor patients through the end of a prescription drug regimen, how could we determine when a breach has occurred? Must physicians monitor patients weekly? Must they monitor daily? Will a phone

call or email message suffice, or must there be an office visit? How will a physician's duty to monitor vary depending upon the drug prescribed? Some prescriptions provide refills for a six-month or one-year term. What is a physician's duty to monitor over a long-term prescription period? We decline the Wiegerts' invitation to impose such vague and undefined duty on physicians. Even Dr. Breggin's affidavit reveals that the scope of the duty the Wiegerts are attempting to place on Dr. Goldberg is unwieldy. In his affidavit, Dr. Breggin states that the "FDA approved manufacturer's labeling for temazepam provides that . . . if it is taken for longer periods of time such as 2 to 3 weeks, *periodic reevaluation* is required." (Emphasis added.)

¶ 21. While we acknowledge that the Wiegerts have established, for purposes of this appeal, that Dr. Goldberg had a duty to monitor Wiegert, we cannot agree that such a duty is constant and ongoing, subject to breach twenty-four hours a day during the entire prescription period. More appropriately, we hold that Dr. Goldberg had a duty at the time he wrote the prescriptions as stated in the trial court's analysis:

> [A]ny claim of an omission was an omission that occurred in the distinct time frame Dr. Goldberg either intentionally or unintentionally did not require follow-up when he gave the prescriptions and/or when he saw the patient. At that point in time his negligence or omission, his negligent conduct is complete.

## CONCLUSION

¶ 22. We hold that because no issue of material fact precludes summary judgment, it is an appropriate vehicle for resolving this case. We further conclude that although the Wiegerts state a claim based on the

707

continuum of negligent medical treatment rule, the claim was not timely filed under WIS. STAT. § 893.55(1). Accordingly, the order of the trial court is affirmed.

*By the Court.*—Order affirmed.