Kenosha Fire Fighters, Local Union No. 414, AFL–CIO, Plaintiff-Appellant,

v.

City of Kenosha, Defendant-Respondent.

Court of Appeals

*No. 91–2332. Submitted on briefs February 26, 1992.—Decided April 8, 1992.*

(Also reported in 484 N.W.2d 152.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Richard V. Graylow* and *John C. Talis* of *Lawton & Cates, S.C.* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Lon D. Moeller,* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

NETTESHEIM, P.J. Kenosha Fire Fighters Local Union No. 414, AFL–CIO (union) appeals from a partial summary judgment granted in favor of the city of Kenosha (city). The trial court ruled that the city did not owe any "increased wages" penalties pursuant to sec. 109.11(2), Stats. The payments were ordered by an arbitrator's award which was later incorporated into the parties' new collective bargaining agreement.

The issue on appeal is whether the city's obligation for payment of these wages commenced with the date of the arbitrator's award or a later date when the parties' executed their new collective bargaining agreement. We

agree with the trial court's ruling that the city's obligation for payment of the wages awarded by the arbitrator commenced with the parties' execution of their new collective bargaining agreement.

The facts of this case are not in dispute. Following the expiration of their collective bargaining agreement on December 31, 1986, the union and the city engaged in collective bargaining for their 1987–88 contract. Although the parties made progress in negotiations on certain issues, they were unable to agree on the amount of compensation for "work out of classification," which occurs when a fire fighter is temporarily assigned to a job carrying a higher classification and associated pay rate. The union sought a provision in the new contract authorizing pay at the higher rate when such "work out of classification" occurred. The city opposed such a provision.

Given the impasse, the union petitioned for arbitration pursuant to a provision of the Municipal Employment Relations Act, sec. 111.70, Stats. *et seq.* The parties selected an arbitrator and proceeded to arbitration pursuant to sec. 111.77(4)(b) whereby the arbitrator adopts one party's final offer on an issue without modification. The arbitrator selected the union's offer which consisted of the following:

Create new Section 11.07 as follows:

11.07   Any Firefighter, Apparatus Operator, or Lieutenant (FPB or Line) temporarily assigned to perform the duties of a higher rank than the employee's present rank shall be paid at the lowest scale of the rank to which he/she is temporarily assigned for that period of time. No employee will be assigned to a rank or rate of pay that is less than his/her regular classification or salary.

In the event of the absence of a Line Captain or House Captain, and a Lieutenant on duty during that absence performs the duties of that Captain, that Lieutenant shall be compensated at the step A rate for Captain for that period of time.

For the purpose of this section, persons working in another classification as a result of voluntary time trading by two employees will not be entitled to additional compensation under this section.

The arbitrator issued his written award on January 26, 1988. Thereafter, on February 15, 1988, the city's common council voted to adopt the arbitrator's decision and to incorporate the union's final offer into the parties' 1987–88 collective bargaining agreement. The agreement was formally executed by the parties on May 20, 1988.

Thereafter, the city made two retroactive wage payments pursuant to the "work out of classification" provision of the new agreement: one on June 20, 1988 for the period of January 1 through December 31, 1987; and the second on June 24, 1988 covering the period of January 1 through May 31, 1988.

The union contended, however, that the city had not made these payments within the thirty-one day time limit set out in sec. 109.03, Stats. Therefore, the union made claim for the "increased wages" penalties set out in sec. 109.11(2), Stats. These statutes provide, in part:

**109.03  When wages payable; pay orders**

**(1)** REQUIRED FREQUENCY OF PAYMENTS. Every employer shall as often as monthly pay to every employe engaged in the employer's business . . . all wages earned by such employe to a day not more than 31 days prior to the date of such payment.

**109.11  Penalties . . ..**

(2) . . . [E]very employer violating this chapter shall be liable for the payment of the following increased wages: 10% if the delay does not exceed 3 days; 20% if the delay is more than 3 days, but does not exceed 10 days; 30% if the delay is more than 10 days, but does not exceed 20 days; 40% if the delay is more than 20 days, but does not exceed 30 days; 50% if the delay is more than 30 days; but in no event shall such increased liability exceed $500.

The city rejected the union's claim for payment of these penalties and the union responded with this action. The city brought a motion for summary judgment, arguing that its obligation to pay the wages awarded by the arbitrator was not effective until May 20, 1988, when the parties executed their new collective bargaining agreement. The trial court agreed, noting that the arbitration award directed the parties to "create" a new provision in the collective bargaining agreement. In addition, the court observed that the procedures set out in ch. 788, Stats., for judicial approval of arbitration awards suggested that such awards are not self-executing.

On the basis of this reasoning, the trial court concluded that the city's June 20, 1988 payment was timely since it occurred within thirty-one days of the May 20 signing of the new collective bargaining agreement. Thus, the court granted partial summary judgment in favor of the city as to this payment. However, because the June 24 payment was beyond the thirty-one day period, the court denied the city's summary judgment motion and, instead, granted partial summary judgment to the union. The city does not appeal the court's ruling as to this latter payment, and the appellate issue is limited to the June 20 payment.

Because this case involves the application of a statute to a particular set of facts, it presents a question of law. *Ynocencio v. Fesko,* 114 Wis. 2d 391, 396, 338 N.W.2d 461, 463 (1983). This court reviews questions of law independently of the trial court's decision. *Id.* In addition, we review summary judgment determinations *de novo. Fortier v. Flambeau Plastics Co.,* 164 Wis. 2d 639, 651, 476 N.W.2d 593, 597 (Ct. App. 1991).

The issue is when the city's obligation to pay the wages covered by the arbitrator's award arose. The question is one of first impression under sec. 109.03(1), Stats.[1]

The union argues that the wages awarded by the arbitrator are owed from the date of the arbitration award because the award is "self-executing." The union relies upon a line of cases which holds that where the parties agree to arbitration as a method of dispute resolution, such is final and binding upon the parties. *See, e.g., City of Oshkosh v. Oshkosh Public Library Clerical & Maintenance Employees Union Local 796-A,* 99 Wis. 2d 95, 103, 299 N.W.2d 210, 214 (1980), and *Nicolet*

---

[1]The supreme court did discuss sec. 109.03, Stats., in *American Federation of State, County, & Municipal Employees Local 1901 v. Brown County,* 146 Wis. 2d 728, 432 N.W.2d 571 (1988). There, a union also argued that the municipal employer owed penalties prescribed by sec. 109.11(2), Stats., for late payment of back wages. The parties did not appear to dispute that the date of the collective bargaining agreement triggered the employer's obligation to pay the wages in dispute. Since the matter was not at issue, the supreme court did not decide the question. Instead, the court decided the case on different grounds, holding that the employer had established a "good cause" defense under sec. 111.70(7m)(e), Stats. *AFSCME Local 1901,* 146 Wis. 2d at 735, 432 N.W.2d at 574.

*High School Dist. v. Nicolet Educ. Ass'n,* 118 Wis. 2d 707, 348 N.W.2d 175 (1984).

While the union correctly cites the rule of these cases, they do not govern here because those cases concerned arbitration of *individual* grievances involving *individual* employees and the contract providing for arbitration clearly revealed the parties' expectation that the arbitrator's award, if favorable to the employee, would trigger the employer's obligation to comply. Such is not the situation here where the arbitration proceeding was part of a concurrent collective bargaining process.

Here, the union's final offer concerning "work out of classification" pay specifically proposed that a *new* section be *created* in the parties *next* collective bargaining agreement. The arbitration award adopted this offer without amendment, qualification or equivocation. Thus, the union proposal and the arbitrator's award premised thereon expressly anticipated further action by the parties, namely, inclusion of the award in the parties' yet to be achieved collective bargaining agreement.

Under the facts of this case, the arbitrator's award cannot be viewed in a vacuum. Instead, the arbitration proceedings were but one facet of the ongoing bargaining process that was to culminate in a formal, signed collective bargaining agreement. We note that "[c]ollective bargaining includes the reduction of any agreement reached to a written and signed document." Section 111.70(1)(a), Stats. Therefore, the city's obligation to pay the wages for "work out of classification" was linked to, and triggered by, the formal contract which the parties had yet to complete at the time of the award.

This conclusion is in keeping with sec. 109.11(1), Stats., which requires the payment of wages which are *due.* Here, the wages in dispute were not due until the

parties had committed such an obligation to contractual status.

The union argues that the trial court's ruling allows, in some cases, for a long hiatus between the arbitrator's award and the final execution of a collective bargaining agreement, depriving the benefited employees from timely payment of the award. This result, the union argues, frustrates the public policy underpinning the statutory requirement for the prompt payment of wages.[2]

We respond with what we already have held—the rule of sec. 109.11, Stats., and the public policy underpinning the statute is to obtain the prompt payment of *wages which are due.* Here, we have concluded that the wages in dispute were not due until the parties signed their new collective bargaining agreement. Therefore, the interests served by the statute are not invoked in a situation such as this.

If, however, an employer should seek to avoid the consequences of an adverse arbitration award by refusing to bargain or refusing to implement an arbitrator's award, such conduct is subject to control, discipline and sanction under the Municipal Employment Relations Act and related sections. *See* secs. 111.70(4)(b), 111.07(4), 111.70(3)(a)7, and 111.70(7m)(e), Stats.

In its reply brief, the union argues that the Wisconsin Supreme Court's recent decision in *Sauk County v. WERC,* 165 Wis. 2d 406, 477 N.W.2d 267 (1991), supports its position. We disagree.

---

[2]The union does not argue that such a scenario is present in this case where the arbitrator issued the award on January 26, 1988, the city's common council approved the award on February 15, 1988, and the parties signed the collective bargaining agreement on May 20, 1988.

In *Sauk County,* the municipal employer had deducted fair-share fees and union dues under the previous collective bargaining agreement. When the agreement expired, the employer ceased deducting the fees and dues. During the parties' negotiations, neither party sought any change to the previous contractual provision requiring the employer to deduct these items. However, the parties negotiations reached an impasse on other issues and the matter went to arbitration.

The union's final offer, in addition to certain specific proposals, also recited that the new agreement should include all provisions of the previous agreement except as modified and that the agreement should be retroactive to the date of expiration of the previous agreement. The arbitrator selected the union's proposal, including the retroactivity provision. When the ensuing collective bargaining agreement was signed, the employer resumed deductions of the fair-share fees and union dues but refused to do so retroactive to the date of expiration of the previous agreement.

Among the issues in *Sauk County* was whether the employer had committed a prohibited practice by refusing to retroactively deduct fees and dues to cover the period of time between the expiration of the previous employment contract and the ratification of the successor contract. *Id.* at 410–11, 477 N.W.2d at 269. The supreme court held that an "arbitration decision" under sec. 111.70(3)(a)7, Stats., encompasses all items subsequently incorporated into a collective bargaining agreement, even those not in dispute before the arbitrator. *Sauk County,* 165 Wis. 2d at 417, 477 N.W.2d at 272. Thus, the court further held that the retroactivity provisions set out in the arbitration award and in the parties' ultimate collective bargaining agreement included fees and dues, even though those matters were not actively

disputed between the parties. *Id.* at 419, 477 N.W.2d at 273.

Thus, the issue in *Sauk County* was retroactivity. That is not the issue here. The city has fully recognized and paid its retroactive obligations under both the arbitrator's award and the ensuing collective bargaining agreement. Rather, the issue here is *when*—not *whether*—the city's obligation to make the retroactive payments arose. For the reasons given, we conclude that the date of the parties' execution of the collective bargaining agreement triggered this obligation.

*By the Court.*—Judgment affirmed.