STOCKBRIDGE SCHOOL DISTRICT, Petitioner-Appellant-Petitioner,

v.

DEPARTMENT OF PUBLIC INSTRUCTION SCHOOL DISTRICT BOUNDARY APPEAL BOARD, Respondent-Respondent.

Supreme Court

*No. 94–1867. Oral argument May 3, 1996.—Decided June 25, 1996.*

(Also reported in 550 N.W.2d 96.)

For the petitioner-appellant-petitioner there were briefs by *Robert W. Burns, Thomas E. Griggs, Paul C. Hemmer* and *Godfrey & Kahn, S.C.*, Green Bay and oral argument by *Thomas E. Griggs and Robert W. Burns.*

For the respondent-respondent the cause was argued by *Laura Sutherland*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

ANN WALSH BRADLEY, J.   The petitioner, Stockbridge School District (Stockbridge), seeks review of a published decision of the court of appeals.[1] That decision affirmed an order of the circuit court for Manitowoc County, Fred H. Hazlewood, Judge, which affirmed decisions of the respondent, Department of Public Instruction School District Boundary Appeal

[1] *Stockbridge Sch. Dist. v. Department of Public Instruction Dist. Boundary Appeal Bd.*, 192 Wis. 2d 622, 531 N.W.2d 624 (Ct. App. 1995).

Board ("the Board"). Stockbridge argues that the Board exceeded its authority under Wis. Stat. § 117.12(1) (1993-94)[2] when it ordered that parcels of property could be detached from Stockbridge and attached to adjoining school districts even though the parcels did not border those adjoining districts. Because we conclude that § 117.12(1) allows for the detachment of such "island" parcels, we affirm the decision of the court of appeals.

The relevant facts are undisputed. Residents of the Stockbridge School District filed petitions to detach their property from the district pursuant to Wis. Stat. § 117.12.[3] Twenty-one of the petitions sought attachment to the Chilton School District and the remaining petition sought attachment to the Hilbert School District. Both the Chilton and Hilbert school districts border Stockbridge.

---

[2] All future statutory references are to the 1993-94 volume unless otherwise indicated.

[3] Wisconsin Stat. § 117.12 states in relevant part:

**Detachment and attachment of small territory initiated by owner. (1)** Application. This section applies to the detachment of territory from one school district and its attachment to an adjoining school district if all of the following apply:

(a) The assessed value of the territory proposed to be detached from one school district and attached to an adjoining school district, divided by the assessment ratio of the taxation district, is less than 7% of the equalized valuation of the school district from which it is proposed to be detached.

(b) Less than 7% of the enrollment of the school district from which the territory is proposed to be detached resides in the territory proposed to be detached from that school district.

(2) Petition. A majority of the electors residing in the territory described under sub. (1) or owners of 50% or more of that territory may file a written petition with the clerk of the school district in which the territory is located requesting the detachment of the territory from that school district and its attachment to an adjoining school district.

The Chilton and Hilbert school boards approved the petitions, but Stockbridge denied them. The petitioners sought administrative appeal with the Board pursuant to Wis. Stat. § 117.12(4), (5). After conducting a hearing on the petitions, the Board established certain criteria to determine which petitioners would be permitted to detach their property from Stockbridge.[4] Based on these criteria, the Board granted portions of 15 of the petitions. In all, the Board ordered 46 parcels to be detached from Stockbridge; 44 to be attached to Chilton and two to Hilbert. Forty-one of these parcels are "island" parcels, meaning that they do not share a common boundary with the school district of attachment.

Stockbridge appealed the Board's orders to the Manitowoc County circuit court.[5] It argued that the Board lacked jurisdiction to order the detachment in part because: (1) the parcels to be detached had no common boundary with the proposed school district of attachment, contrary to § 117.12(1); and (2) one of the Board's orders was void because it included territory that was also included in a prior and pending appeal,

[4] The Board determined that petitioners were qualified to detach if they: (1) were property owners; (2) signed a petition for detachment; (3) signed the appeal petition to the Board; and (4) had school age children living on the property. The Board subsequently held another hearing for the purpose of reviewing the administrative procedures utilized by the Department of Public Instruction in applying these standards.

[5] Each of the Board's orders were separately appealed. Stockbridge initially appealed the one order relating to the Hilbert island parcels to the Calumet County circuit court. However, this order was subsequently moved to Manitowoc County by order for change of venue. All of the orders were subsequently consolidated into one case.

contrary to Wis. Stat. § 117.05(4)(b)1.[6] Stockbridge also argued that the Board's actions were arbitrary and capricious. The circuit court affirmed the Board's orders. Stockbridge appealed, relying solely on its jurisdictional arguments. The court of appeals affirmed the circuit court's order.

The only issues courts may consider on appeals from school reorganizations are whether the Board acted within its jurisdiction and whether its order was arbitrary and capricious. *Joint Sch. Dist. No. 2 v. State Appeal Bd.*, 83 Wis. 2d 711, 720, 266 N.W.2d 374 (1978); *Larson v. State Appeal Bd.*, 56 Wis. 2d 823, 825, 202 N.W.2d 920 (1973). Because Stockbridge has abandoned its argument that the Board's actions were arbitrary and capricious, we limit our discussion to the jurisdictional arguments as presented by Stockbridge.

I.

We first address Stockbridge's argument that the Board can only exercise its jurisdiction to detach parcels from one district and attach them to another district under § 117.12, if the parcels to be detached border the school district of attachment. This requires us to interpret the language of § 117.12. The interpretation of a statute presents a question of law that this court reviews de novo. *Town of Clearfield v. Cushman*, 150 Wis. 2d 10, 19, 440 N.W.2d 777 (1989). Our sole purpose when interpreting a statute is to ascertain the intent of the legislature. *Marshall-Wis. v. Juneau*

---

[6] Wisconsin Stat. § 117.05(4)(b)1 provides that "[a]ny other reorganization proceeding commenced or order made that includes any territory included in the pending reorganization proceeding is void."

219

*Square Corp.*, 139 Wis. 2d 112, 133, 406 N.W.2d 764 (1987). The proper method for doing so is well-established and was recently summarized by this court as follows:

> This court's first resort is to the plain language of the statute itself. If the meaning of the statute is plain, we are prohibited from looking beyond the language to ascertain its meaning. . . . If and only if the language of the statute does not clearly or unambiguously set forth the legislative intent, however, will this court construe the statute so as to ascertain and carry out the legislative intent. In such case, we examine the history, context, subject matter, scope and object of the statute.

*Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996).

The statutory language at issue states that § 117.12 "applies to the detachment of territory from one school district and its attachment to an adjoining school district . . . ." § 117.12(1). Both Stockbridge and the Board contend that this language is clear on its face and, therefore, it is not necessary to engage in statutory construction to determine its meaning.[7] However, Stockbridge and the Board reach opposite results when interpreting the statute based on this plain meaning approach.

Stockbridge focusses on the word "attachment" to interpret the statute. It argues that because the plain meaning of attachment embodies the concept of physi-

---

[7] *See Voss v. City of Middleton*, 162 Wis. 2d 737, 749 n.5, 470 N.W.2d 625 (1991) (using the term "construction" to signify the second step in our process of ascertaining legislative intent where our "interpretation" has shown that the plain language of the statute is unclear or ambiguous).

cal connection, the statute mandates that territory to be detached from one school district must share a common boundary with the school district to which it is to be attached.[8] In contrast, the Board focusses on the word "adjoining" in its interpretation. It asserts that because the term "adjoining" modifies "school districts," not territory, the plain language of § 117.12(1) only requires that the two districts involved in the detachment and attachment of parcels share a common boundary.

The lower courts also disagreed on the proper interpretation of the statute. The circuit court interpreted the language using a plain meaning approach, but relied on a dictionary definition of attachment as referring to "attachment for an administrative or political purpose," not actual physical connection. The court of appeals concluded that the key to understanding § 117.12(1) is the word "adjoining" and not "attachment." According to the court of appeals, "[t]he real question posed by the statute as applied here is 'what must adjoin—the parcel and the attaching district or

---

[8] Stockbridge also relies on *Joint Sch. Dist. No. 10 v. Sosalla*, 3 Wis. 2d 410, 80 N.W.2d 359 (1958). In *Sosalla*, this court interpreted Wis. Stat. § 40.075 (1955-56), which stated that "[t]erritory not in but adjoining a district . . . may be annexed thereto upon a petition . . . ." Relying on that language this court disallowed certain annexations because the territory was separated by intervening areas from the school district of attachment. *Sosalla*, 3 Wis. 2d at 415-16. Stockbridge argues that despite this substantially different language and the fact that the case did not analyze the word attachment, *Sosalla* supports its plain meaning argument that a common boundary is required. We are unpersuaded that *Sosalla* has any precedential value to this case.

merely the two districts themselves?' " *Stockbridge,* 192 Wis. 2d at 626.

Ambiguity arises where the language may be reasonably construed in two different ways. *State ex rel. Girouard v. Circuit Court,* 155 Wis. 2d 148, 155, 454 N.W.2d 792 (1990). Although the mere fact that parties interpret a statute differently does not create ambiguity, this court has recognized that different yet equally reasonable interpretations by various decision-making bodies is indicative that a statute may support more than one reasonable interpretation. *Harnischfeger Corp. v. LIRC,* 196 Wis. 2d 650, 662, 539 N.W.2d 98 (1995).

We are persuaded by the court of appeals' approach that the key to understanding the statute lies in the term "adjoining" rather than "attachment." Contrary to Stockbridge's plain meaning argument, the word "attachment" does not mandate an actual physical connection. As the circuit court recognized, "attachment" may reasonably indicate a connection for an administrative or political purpose, or an emotional bond by affection, sympathy, or loyalty. Further, Stockbridge's argument focusses only on the word attachment to the exclusion of the remaining language in the sentence. There is additional ambiguity when the sentence is considered in its entirety. We agree with the court of appeals that upon considering the word "adjoining," the statute is ambiguous because it may be reasonably interpreted in two different ways. The court of appeals aptly described the ambiguity as follows:

> If we consider the phrase "its attachment to an adjoining school district," the antecedent of the pos-

222

sessive pronoun "its" appears to be "territory." From this, a reasonable reader could infer that the *territory* must adjoin the attaching school district. However, if we consider the obvious parallelism of the phrases "from one school district . . . to an adjoining school district," then a reasonable reader could understand the statute to require that only the school districts themselves need adjoin.

*Stockbridge Sch. Dist. v. Department of Public Instruction Dist. Boundary Appeal Bd.*, 192 Wis. 2d 622, 626-27, 531 N.W.2d 624 (Ct. App. 1995) (citations omitted).

Because we conclude that the statute is ambiguous, we next turn to extrinsic matters such as the statute's history, context, and object in order to ascertain the legislature's intent. *Jungbluth*, 201 Wis. 2d at 327. Upon considering the parties' arguments regarding these statutory construction aids, we conclude, as did the court of appeals, that the legislative history of § 117.12 compels the conclusion that the statute does not require that the detaching parcel border the school district of attachment.

The court of appeals engaged in a comprehensive legislative history analysis of § 117.12 and its predecessors, which we briefly summarize here. The first statute that specifically addressed the detachment of small parcels, Wis. Stat. § 40.032 (1961-62), provided that property may be detached from one school district and attached to an adjoining school district "[i]f the owner of an individual parcel of property adjoining the boundary line between 2 school districts submits a written petition." As recognized by the court of appeals, this language explicitly provided that the parcel to be detached must have a common boundary with the school district of attachment.

223

However, in 1981, this language was amended as follows:

> The owner of an individual parcel of property may file a written petition with the school boards of 2 adjoining school districts requesting that the parcel be detached from its present school district and attached to the adjoining school district.

*See* Wis. Stat. § 117.08 (1981-82), created by Laws of 1981, ch. 177, § 6. According to an analysis by the Legislative Reference Bureau, the new language substantially changed the statute to allow any property owner to petition for detachment of his or her parcel, regardless of its location within the district:

> [C]urrent law provides that the owner of an individual parcel of property which adjoins the boundaries of 2 school districts may file a written petition with the school boards requesting the parcel be detached from its present school district and attached to the other school district. This bill provides that the owner of *any* individual parcel of property may file such a petition with the school boards of *2 adjoining school districts*.

Legislative Reference Bureau Analysis of 1981 Senate Bill 392 (emphasis added). This change was reiterated in a fiscal estimate attached to the same bill. *See* Fiscal Estimate of 1981 Senate Bill 392.

After this apparent change in the law, the statute was changed in 1983 and again in 1989 into its present ambiguous form. *See* 1983 Wis. Act 27, § 1465; 1989 Wis. Act 114. Because the court of appeals found nothing to indicate that the legislature intended to modify its explicit position taken in 1981, it concluded that § 117.12(1) requires only that the school districts adjoin, not that the detaching parcel adjoin the school

district of attachment.[9] *Stockbridge*, 192 Wis. 2d at 629-30.

This court has previously held that the analysis by the Legislative Reference Bureau is significant in determining legislative intent. *Milwaukee v. Kilgore*, 193 Wis. 2d 168, 184, 532 N.W.2d 690 (1995). Although the language of § 117.08 has subsequently been revised and is ambiguous as it now appears in § 117.12(1), we have found no similar statement in the subsequent history to indicate that the legislature intended to modify the change made in 1981. Further, counsel for Stockbridge conceded at oral argument that there is no legislative history to support its construction of the statute. Accordingly, we conclude that the legislative history analysis set forth by the court of appeals is compelling and indicates that the legislature intended to allow the detachment of island parcels.[10]

---

[9] Stockbridge contends that this legislative history analysis is flawed because Wis. Stat. § 117.08 (1981-82) is not a predecessor of § 117.12(1). Stockbridge asserts that there is no direct link between § 117.08 (1981-82) and § 117.12(1), because § 117.08 (1981-82) was not "repealed and renumbered" as § 117.12, as stated by the court of appeals. Rather, § 117.12 was newly created by the legislature. *See* 1989 Wis. Act 114, § 12 (repealing and recreating § 117.08) and § 1 (creating § 117.12). We reject this argument as elevating form over substance. Although there may be a technical break in the link between the 1981-82 and 1989-90 versions, they represent the only statutes governing the detachment and attachment of small territory.

[10] Stockbridge also argues that even assuming that the legislative history supports the conclusion that only the two school districts involved in the detachment proceeding adjoin each other, it still must be determined whether the word attachment requires a common boundary. Stockbridge contends that our interpretation leaves the word attachment as meaningless sur-

In addition to legislative history, the parties offer various arguments generally pertaining to the context, scope, and subject matter of the statute. However, we find none of these to be as persuasive as the legislative history in terms of providing an indication of the legislature's intent.

For example, both the court of appeals and the Board point to the language of Wis. Stat. § 117.15(5) as providing significant guidance on the question of whether § 117.12 prohibits island detachments. Section 117.15(5) requires that when deciding petitions a school board must consider "whether the proposed reorganization will make any part of a school district's territory noncontiguous." The Board argues that because it is required to consider whether a district will be noncontiguous as a result of a reorganization, § 117.15(5) expressly contemplates that islands could be detached. Stockbridge contends that § 117.15(5) requires that the Board consider only whether a proposed detachment *will make an island*, not whether the proposed detachment *is an island*. We are unpersuaded by either party's arguments that § 117.15(5) provides sufficient evidence of the legislature's intent.[11]

---

plusage. We consider this argument to be merely a different variation of Stockbridge's argument, which we have previously rejected, that the plain meaning of the word attachment requires a physical connection with the district of attachment.

[11] Stockbridge argues that common sense dictates that by its very name, the School District *Boundary* Appeal Board is intended to deal with matters involving district boundaries, not serve as arbiter of all territory within a district. We do not consider the name of the Board to be particularly indicative of its legislatively granted powers in this instance. Stockbridge also argues that the "piggyback" procedure used by the petition-

Finally, Stockbridge contends that allowing the detachment of islands is bad public policy and would frustrate the overriding purpose of ch. 117—which it asserts is to promote the educational welfare of children. For example, Stockbridge fears that small school districts will be decimated by residents who perceive that their children can receive a better education in a neighboring school district. Stockbridge also argues that it would allow property owners to "leap-frog" their property across the state to distant school districts through successive detachment provisions.

This court has long held that school district reorganization represents the determination of policy questions of a legislative nature which the legislature has delegated to the Board. *Larson*, 56 Wis. 2d at 826. Therefore, courts do not review the policy, wisdom or fairness of a particular reorganization decision, except to determine whether the Board's decision was arbitrary and capricious. *See Zawerschnik v. Joint County Sch. Comm.*, 271 Wis. 416, 73 N.W.2d 566 (1955).

Stockbridge's argument that allowing islands to be detached will potentially decimate smaller school districts is misleading because such a result can occur even under its own interpretation of § 117.12(1). For example, nothing would prohibit a large number of individual border properties with a substantial portion

---

ers to establish a border link to the school district of attachment circumvents the requirements of the large territory detachment statute, Wis. Stat. § 117.11, and that applying the common boundary requirement to § 117.12(1) harmonizes the interaction between small and large territory reorganization. This argument is rendered irrelevant both by our holding that § 117.12(1) allows for island parcels to be detached and that § 117.12(5) expressly recognizes that there may be multiple small territory petitions for detachment.

of a district's equalized value from petitioning for detachment and potentially decimating a district. In fact, this court has on numerous occasions in the past upheld detachment orders that have allegedly decimated a school district. *See, e.g., Iron River Grade Sch. Dist. No. 1 v. Bayfield County Sch. Comm.*, 31 Wis. 2d 7, 142 N.W.2d 227 (1966) (affirming detachment order which left only one-third of the original tax base but 92 percent of the student population); *State ex rel. Grant Sch. Dist. v. Sch. Bd.*, 4 Wis. 2d 499, 91 N.W.2d 219 (1958) (affirming detachment order which took 80 percent of the equalized value of the district); *Zawerschnik*, 271 Wis. 416 (affirming order that detached 77 percent of tax base).

Such reorganizations, while still possible, are less likely today given that the legislature has since provided the Board with specific factors set forth in Wis. Stat. § 117.15 which it must consider before detaching boundary or "island" parcels. Under § 117.15, the Board must consider factors such as: (1) the geographical characteristics of the affected school districts and travel time (Wis. Stat. § 117.15(1)), (2) the educational needs of all of the children residing in the affected school districts and the ability of each district to meet those needs (Wis. Stat. § 117.15(2)), (3) any adverse effect on curricular and extracurricular programs of each district (Wis. Stat. § 117.15(2m)), and (4) the fiscal effect of the proposed reorganization (Wis. Stat. § 117.15(4)).

Accordingly, Stockbridge's fears of wide-scale decimation of school districts and property owners "leap-frogging" across the state are largely unfounded. In fact, this case is illustrative of the process intended by the legislature. Counsel represented at oral argument that the property proposed to be detached represented

63 percent of the district's equalized value. The Board, applying the factors in § 117.15 and its own criteria, approved the detachment of property representing 6.8 percent of the district's equalized value.

If, as Stockbridge submits, the legislature meant something other than what the legislative history indicates, the remedy is not in the courts. Modifications of the statute, if it works badly or in undesirable ways feared by Stockbridge, must be obtained through legislative, not judicial, action. *See State ex rel. Badtke v. School Bd.*, 1 Wis. 2d 208, 213, 83 N.W.2d 724 (1957). In the meantime, this court will continue to review the legislative decisions made by the Board as it has in the past, determining whether the Board acted within its jurisdiction and whether its order was arbitrary and capricious. *Larson*, 56 Wis. 2d at 825.

In sum, we conclude that the explicit legislative history of the predecessor to § 117.12(1) provides the most persuasive evidence of the legislature's intent. None of Stockbridge's arguments related to the context, scope, or public policy served by the statute is compelling enough to overcome the legislature's stated intention in 1981 to allow any property owner to petition for detachment and attachment to an adjoining district.

## II.

We next address Stockbridge's second jurisdictional argument, that one of the Board's orders is void because it dealt with territory included in a prior and pending reorganization petition contrary to Wis. Stat. § 117.05(4)(b)1. That statute provides that while a reorganization is pending, "any other reorganization proceeding commenced or order made that includes any territory included in the pending reorganization

proceeding is void." Stockbridge contends that territory included in Petition No. 1 (Circuit Court No. 93-CV-331H) was also included in Petition No. 16 (Circuit Court No. 93-CV-330H), which was filed prior to Petition No. 1. Therefore, Stockbridge argues that all proceedings related to Petition No. 1 are void.[12]

Our review of the record reveals that evidence of the overlap complained of by Stockbridge has never been fully developed throughout these proceedings. We note that the evidence in the record fails to conclusively establish an overlap between Petitions No. 1 and 16. For example, the petitions on their face do not establish an overlap because Petition No. 16 lacks any legal description of the property to be detached. Stockbridge in its brief relies only on a map it submitted to the Board as an exhibit to indicate the overlap. However, the map indicates by its legend that Petitioned Area 16 is a "Possible Petition Overlap." A spokesperson in favor of detachment testified that while there was an overlap, it was due to a clerical error.

Even assuming that the record supports a finding that Petitioned Areas 1 and 16 overlap, no such finding has ever been made. Stockbridge asserts that the Board failed to decide this issue. However, this court has previously recognized the "fundamental policy that parties to an administrative proceeding  must raise known issues and objections and that all efforts should be directed toward developing a record that is as complete as possible in order to facilitate subsequent judicial review of the record." *Omernick v. DNR*, 100 Wis. 2d 234, 248, 301 N.W.2d 437, *cert. denied*, 454

[12] Petition No. 1 involved four of the 44 parcels which the Boundary Appeal Board allowed to detach from Stockbridge and attach to Chilton.

U.S. 883 (1981). Our review of the record indicates that Stockbridge failed to do so. While it is true that counsel for Stockbridge in his opening statement to the Board identified the issue as one he was going to address, he never subsequently addressed it.[13]

██

We note that the court of appeals was also troubled by the inadequacy of the record in considering this issue, and concluded that even if there were error, Stockbridge "invited" it because it likewise considered the overlapping petitions when initially denying them. *See Stockbridge*, 192 Wis. 2d at 632 & n. 10. In essence, Stockbridge now seeks to prevent the Board from doing the very thing that it did, that is, make a determination on a petition which allegedly contains property described in a previously filed petition. Because the overlap issue was neither developed adequately by Stockbridge nor decided by the Board, and the error complained of was facilitated by Stockbridge's actions, we agree with the conclusion of the court of appeals.

---

[13] In addition to the alleged overlap in Petitions No. 1 and 16, Stockbridge also argued to the board that an overlap existed between Petitions No. 12 and 20. The record does not reveal why Stockbridge apparently abandoned the overlap issue as to Petition No. 20. We note that counsel for Stockbridge raised the overlap issue again as to both Petition No. 1 and Petition No. 20 at the second hearing, but did not develop it. Rather, counsel merely summarily stated that regardless of the reasons, the overlap existed, and that the Board lacked jurisdiction over Petitioned Areas 1 and 20. Nevertheless, the substantive decision had already been made, and the second hearing was limited to the proper procedure for implementing the Board's decision. *See supra* n. 4.

*By the Court.*—The decision of the court of appeals is affirmed.