Neil S. HUBBARD, Plaintiff-Respondent-Petitioner,

v.

Shaun MESSER, d/b/a Degree Systems, Defendant-Appellant.

Supreme Court

*No. 02–1701–FT. Oral argument September 17, 2003.—
Decided November 20, 2003.*

2003 WI 145

(Also reported in 673 N.W.2d 676.)

For the plaintiff-respondent-petitioner there were briefs by *Erwin H. Steiner* and *Steiner & Wright, LLC,* Eau Claire, and oral argument by *Erwin H. Steiner.*

For the defendant-appellant there was a brief by *Christopher R. Bloom, Joel L. Aberg* and *Weld, Riley, Prenn & Ricci, S.C.,* Eau Claire, and oral argument by *Joel L. Aberg.*

An amicus curiae brief was filed by *Timothy G. Costello, Timothy C. Kamin* and *Krukowski & Costello, S.C.,* Milwaukee, on behalf of Wisconsin Manufacturers & Commerce.

An amicus curiae brief was filed by *Raymond J. Pollen, Amy J. Doyle, Crivello, Carlson & Mentkowski,* Milwaukee, on behalf of Wisconsin Municipal Mutual Insurance Company and Wisconsin Counties Associa-

tion, *John J. Prentice* and *Prentice & Phillips LLP*, Milwaukee, on behalf of Wisconsin Counties Association.

An amicus curiae brief was filed by *Aaron N. Halstead, Kathleen Meter Lounsbury* and *Shneidman, Hawks & Ehlke, S.C.*, Madison, on behalf of District Council 40, AFSCME, AFL-CIO and Carol Gonzales.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J.   This is a review of a published decision of the court of appeals reversing a judgment of the Circuit Court for Eau Claire County, Paul J. Lenz, Judge.[1] The circuit court granted summary judgment to Neil S. Hubbard, the employee, concluding that because certain wages were due and unpaid on the deadline set by Wis. Stat. § 109.03(1) (2001–02),[2] Shaun Messer d/b/a Degree Systems, the employer, owed the employee a civil penalty (referred to in the statutes as increased wages) of 70% of the amount of wages due and unpaid pursuant to Wis. Stat. § 109.11(2), which governs wage claim actions.

¶ 2.   The court of appeals reversed the judgment of the circuit court and remanded the matter to the circuit

---

[1] *Hubbard v. Messer*, 2003 WI App 15, 259 Wis. 2d 654, 656 N.W.2d 475.

[2] Wisconsin Stat. § 109.03(1) provides:

Every employer shall as often as monthly pay to every employee engaged in the employer's business, except those employees engaged in logging operations and farm labor, all wages earned by the employee to a day not more than 31 days prior to the date of payment.

All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

court with directions to enter summary judgment for the employer, dismissing the employee's claims with prejudice. The court of appeals concluded that Wis. Stat. § 109.11(2)(b) imposes civil penalties not if wages are due and unpaid after the employer is delinquent for more than 31 days as provided in § 109.03(1), but rather if, at the time a circuit court action commences, the wages are due to an employee and remain unpaid.[3] Thus, the court of appeals concluded that if an employer belatedly pays wages in full before commencement of a circuit court action, the employee does not have an action for civil penalties.

¶ 3.    At issue in the present case is whether the phrase "wages due and unpaid" in Wis. Stat. § 109.11(2)(b), the civil penalties provision, refers to wages due and unpaid by the statutory deadline for the payment of wages or to wages due and unpaid when a circuit court action commences.

¶ 4.    For the reasons set forth, we hold that Wis. Stat. § 109.11(2)(b) does not impose civil penalties when wages due an employee have been fully paid at the time a circuit court action is commenced.

¶ 5.    The facts are not in dispute and are set forth in the decision of the court of appeals. It is sufficient for purposes of this review to note that in 1999 the employer failed to pay wages to the employee and the employee filed a complaint with the Department of Workforce Development (DWD). When the employer did not pay the amount computed by the DWD, the DWD referred the case to the district attorney.[4] The district attorney and the employee's private counsel advised the employer that the employee would enforce

[3] *Hubbard,* 259 Wis. 2d 654, ¶ 1.

[4] *See* Wis. Stat. § 109.11(1)(c).

his rights through a small claims court action. After additional delay, the employer issued two checks, the second one in July 2000, totaling $3,873.91 in satisfaction of the full amounts calculated by the DWD as owing to the employee. The employee cashed both checks and does not claim any wages have not been paid.

¶ 6. On September 14, 2001, the employee commenced a circuit court action seeking a 100% civil penalty under Wis. Stat. § 109.11(2)(b) of $3,873.91. The employer moved for summary judgment, arguing that all wages had been paid fourteen months prior to commencement of the action and that therefore the employee had no cause of action for the civil penalties as a matter of law. The circuit court granted summary judgment in favor of the employee, awarding civil penalties of 70% of the wages due and unpaid at the statutory deadline for the payment of wages. The court of appeals reversed the judgment, holding that civil penalties are available only if wages were unpaid at the commencement of a circuit court action. We granted review to resolve this question of law.

■■

¶ 7. In reviewing a grant of summary judgment, an appellate court applies the standards set forth in Wis. Stat. § 802.08(2) in the same manner as the circuit court. Summary judgment is proper and will be upheld on review when no issues of material fact exist and only a question of law is presented.[5]

■■

¶ 8. The question of law presented in this summary judgment is the interpretation of Wis. Stat.

---

[5] *See Miller v. Thomack,* 210 Wis. 2d 650, 659, 563 N.W.2d 891 (1997).

§ 109.11(2)(b): Does the statute refer to "wages due and unpaid" at the statutory deadline for payment of wages, or does the statute refer to "wages due and unpaid" at the time a circuit court action commences? This court determines questions of law independently of the circuit court and court of appeals, but benefiting from the analyses of these courts.[6]

¶ 9.  Our goal in interpreting a statute is to discern and give effect to the intent of the legislature.[7] Statutory interpretation begins with the language of the statute. Each word should be looked at so as not to render any portion of the statute superfluous.[8] But "courts must not look at a single, isolated sentence or portion of a sentence" instead of the relevant language of the entire statute.[9] Furthermore, a statutory provision must be read in the context of the whole statute to avoid an unreasonable or absurd interpretation. Statutes relating to the same subject matter should be read together and harmonized when possible.[10] A cardinal rule in interpreting statutes is to favor an interpretation that will fulfill the purpose of a statue over an interpretation that defeats the manifest objective of an

[6] *See State v. Cole,* 2003 WI 59, ¶ 12, 262 Wis. 2d 167, 663 N.W.2d 700.

[7] *Id.,* ¶ 13 (citing *State v. Szulczewski,* 216 Wis. 2d 495, 504, 574 N.W.2d 660 (1999)).

[8] *Landis v. Physicians Ins. Co.,* 2001 WI 86, ¶ 16, 245 Wis. 2d 1, 628 N.W.2d 893; *Alberte v. Anew Health Care Servs., Inc.,* 2000 WI 7, ¶ 10, 232 Wis. 2d 587, 605 N.W.2d 515.

[9] *Landis,* 245 Wis. 2d 1, ¶ 16 (quoting *Alberte,* 232 Wis. 2d 587, ¶ 10).

[10] *Cole,* 262 Wis. 2d 167, ¶ 13 (citing *State v. Leitner,* 2002 WI 77, ¶ 30, 253 Wis. 2d 449, 646 N.W.2d 341).

act.[11] Thus a court must ascertain the legislative intent from the language of the statute in relation to its context, history, scope, and objective intended to be accomplished, including the consequences of alternative interpretations.[12]

¶ 10.   We begin with the language of the statute. Wisconsin Stat. § 109.03(5) grants employees a right of action against employers for all unpaid wages due to the employee. Wisconsin Stat. § 109.11(2)(b) provides that in a wage claim action a circuit court may order the employer to pay to the employee "in addition to the amount of wages due and unpaid to an employee . . . increased wages of not more than 100% of the amount of those wages due and unpaid." Section 109.11(2)(b) reads in full as follows:

> In a wage claim action that is commenced after the department has completed its investigation under s. 109.09(1) and its attempts to settle and compromise the wage claim under sub. (1), a circuit court may order the employer to pay to the employee, *in addition to the amount of wages due and unpaid to an employee* and in addition to or in lieu of the criminal penalties specified in sub. (3), *increased wages of not more than 100% of the amount of those wages due and unpaid.*

Wis. Stat. § 109.11(2)(b) (emphasis added).

■■■■

¶ 11.   Wisconsin Stat. § 109.11(2)(b) does not explicitly define the phrase "wages due and unpaid," nor does it state the time at which wages are to be determined as due and unpaid.

---

[11] *State v. Davis,* 2001 WI 136, ¶ 13, 248 Wis. 2d 986, 637 N.W.2d 62.

[12] *Cole,* 262 Wis. 2d 167, ¶ 13 (citing *State v. Davis,* 2001 WI 136, ¶ 13, 248 Wis. 2d 986, 637 N.W.2d 62).

¶ 12. In seeking to fill this void, the employer forwards three textual arguments supporting his view that the phrase "wages due and unpaid" refers to wages due and unpaid when a circuit court action commences.

¶ 13. First, the employer argues that because Wis. Stat. § 109.11(2)(b) begins with the words "in a wage claim action," the legislature intended that the civil penalty apply only to the facts as they exist "in a wage claim action." When wages have been paid before a claim action is commenced, he argues, they are no longer due and unpaid in the wage claim action.

¶ 14. Second, the employer argues that if the legislature intended to make civil penalties available for all wages that were due at the time prescribed by chapter 109, it would not have included the word "unpaid" in Wis. Stat. § 109.11(2)(b). He argues that the use of the word "unpaid" in the phrase "wages due and unpaid" indicates that an action to assess civil penalties may commence only as to those wages that have not yet been paid, and that if the penalty provision covered all wages that were paid untimely, then the word "unpaid" would be made superfluous.

¶ 15. Third, Wis. Stat. § 109.11(2)(b) reads that a circuit court may order the employer to pay to the employee, "*in addition to* the amount of wages due and unpaid . . . increased wages of not more than 100% of the amount of wages due and unpaid." The employer argues that the words "in addition to" mean that only if an employee commences an action to collect wages that are due and unpaid may a circuit court award civil penalties against an employer. He argues that the words "in addition" mean that a circuit court must first award the unpaid wages to which an employee is entitled and then award, if the circuit court deems such penalty wages appropriate, an additional percentage

(up to 100%) of the wages due and unpaid. Thus, he argues, the legislature did not create a cause of action for the civil penalties distinct and independent from the underlying cause of action for unpaid wages.

¶ 16. Although these arguments have merit, we conclude that the employer's interpretation does not necessarily rule out the possibility that the phrase "wages due and unpaid" means those wages due and unpaid as of the statutory deadline for payment of wages. The text of the statute does not literally say what the employer is arguing. If the legislature intended to deny employees access to the courts once the delinquent wages are fully paid, the legislature could have stated this intent more clearly and directly. To reach the employer's position, we would have to shuffle several clauses and make several inferences. We should not adopt the employer's interpretation without examining the context, the history, and the purposes of Wis. Stat. § 109.11(2)(b).

¶ 17. Moving beyond the textual arguments, the employer asks us next to place Wis. Stat. § 109.11(2)(b) in the context of § 109.01(4). Under Wis. Stat. § 109.01(4), a "wage deficiency" is defined as "the difference between the amount required by law to be paid and the amount actually paid to an employee." According to the employer, this statutory definition implies that there can be no "wage deficiency" if, at the time the action is commenced, there is no difference between the wages required to be paid and the wages actually paid. Yet § 109.11(2)(b) does not refer to "wage deficiency"; it refers only to wages due and unpaid. If the legislature had used the phrase "wage deficiency" in § 109.11(2)(b), our task might be simpler. It did not, however, and without further exploration of context, history, and

purpose, we are unwilling to incorporate such meaning into the phrase we consider today.

¶ 18. In contrast, the employee asks us to read Wis. Stat. § 109.11(2)(b) in the context of Wis. Stat. § 109.03(5), which provides that each employee "shall" have a right of action against any employer for the full amount of the employee's wages due on each regular pay day "and for increased wages [civil penalties] as provided in s. 109.11(2)." The word "shall" is mandatory, and the employee urges that this statute guarantees employees a right to "increased wages" (the civil penalty) in a civil action as a separate cause of action from the underlying cause of action for wages. The employee urges that when the two statutes are read together, they mean that "wages due and unpaid" refer to wages due and unpaid as of the statutory deadline for payment of wages.[13]

¶ 19. We are not fully persuaded by this interpretation. While we could read Wis. Stat. § 109.03(5) as creating a separate cause of action for increased wages (the civil penalty), it is equally possible that the legislature intended that an action for underlying wages and civil penalties be joined. We are unwilling to adopt the employee's interpretation without examining the history and the purposes of § 109.11(2)(b).

¶ 20. We look to the history of Wis. Stat. § 109.11(2)(b) for guidance about the legislature's intent.

---

[13] The employee relies on the following language: "The wage claim law [chapter 109] requires employers to pay wages promptly. The law provides for, and encourages, enforcement by DWD, but it also grants employees a private right of action against any employer who does not promptly pay the full amount of wages due." *German v. Wis. Dep't of Trans.*, 223 Wis. 2d 525, 529, 589 N.W.2d 651 (Ct. App. 1998).

¶ 21. The legislature adopted Wis. Stat. § 109.11(2)(b) in 1993. Under the precursor to Wis. Stat. § 109.11(2), civil penalties were calculated on the basis of an employer's failure to pay wages when due under chapter 109. The statute calculated a civil penalty on a sliding scale depending on the number of days payment of wages was late, beginning one month after wages were due; the penalty was capped at $500.[14]

¶ 22. In replacing the rigid, formulaic system based on the due date of the wages, the legislature omitted the reference to making the civil penalty begin immediately upon an employer's failure to pay the wages when due under chapter 109. Instead, the legislature granted circuit courts discretion to award civil penalties for "wages due and unpaid," without explicit reference to the date wages were initially due and payable under chapter 109.

¶ 23. Our review of the statutory history and evolution of § 109.11(2)(b) supports the argument that in the 1993 revision the legislature was moving away from making the civil penalty begin immediately upon an employer's failure to pay wages when due under chapter 109.

---

[14] Wisconsin Stat. § 109.11(2) (1991–92) provided as follows:

In addition to the criminal penalties provided in sub. (1), every employer violating this chapter shall be liable for the payment of the following increased wages: 10% if the delay does not exceed 3 days; 20% if the delay is more than 3 days, but does not exceed 10 days; 30% if the delay is more than 10 days, but does not exceed 20 days; 40% if the delay is more than 20 days, but does not exceed 30 days; 50% if the delay is more than 30 days; but in no event shall such increased liability exceed $500.

¶ 24. In testing the validity of this assertion, we look to the legislature's purpose in adopting the statute for additional guidance in interpreting § 109.11(2)(b). Our first step is to look beyond the narrow focus of § 109.11(2)(b) to the broader purpose of chapter 109 generally. Doing so leaves little doubt in our minds that the legislative objective of chapter 109 is to foster the prompt payment of wages due to Wisconsin employees. Chapter 109 "concerns the right of employees to receive their wages when due .... '[It] flows from a simple proposition: if workers are not paid their wages, they and their families will suffer.' "[15]

¶ 25. Various provisions of chapter 109 protect employees through a plethora of administrative and court remedies for employees to settle disputes and collect their wages. The legislature enacted administrative, civil, and criminal penalties designed to encourage employers to pay wages in a timely manner.[16]

¶ 26. While prompt payment of employees is a significant, and perhaps the most important, goal of the legislature, it is not the sole purpose of § 109.11(2)(b). The 1993 changes to the statute demonstrate a commitment to promoting the resolution of wage disputes quickly, efficiently, and voluntarily with the assistance

---

[15] *Jacobson v. Am. Tool Cos., Inc.*, 222 Wis. 2d 384, 400, 588 N.W.2d 67 (Ct. App. 1998) (quoting *Pfister v. Milwaukee Econ. Dev. Corp.*, 216 Wis. 2d 243, 268, 576 N.W.2d 554 (Ct. App. 1998)).

[16] *See, e.g.,* Wis. Stat. §§ 109.03(5) (employee lien); 109.03(6) (employee recovery of expenses); 109.09(2) (employee lien); 109.11(1)(b) (administrative penalty); 109.11(1)(c) (referral of wage claim to district attorney or Wisconsin Department of Justice); 109.11(2)(a) (civil penalties); 109.11(2)(b) (civil penalties); 109.11(3) (criminal penalties).

of the Department of Workforce Development (DWD). The statute recognizes that legitimate wage disputes often arise in the course of business and that such disputes may stem from innocent mistakes or miscalculations. The revised penalty of Wis. Stat. § 109.11(2)(b) in 1993 appears to give employers time to conduct self-audits in order to correct inevitable mistakes in complicated payroll systems and avoid any civil penalty.[17] Just as employees should be paid wages promptly, employers and employees need to be made aware of such mistakes and be allowed to resolve wage disputes arising from them outside of the judicial system.

¶ 27. In order to accomplish this goal, the legislature entrusts the DWD with the responsibility to investigate claims, encourage employers to self-audit when necessary, and settle disputes without lengthy and financially prohibitive litigation. To encourage use of the DWD, Wis. Stat. § 109.11(2)(b) halves the available civil penalty if the DWD is bypassed and a claim is directly pursued in circuit court. The legislature's decision to create a significant disparity between the statu-

---

[17] The drafting record discussing the changes that were ultimately codified in § 109.11(2)(b) primarily focused on how the changes in the penalty provisions would ultimately expedite the administrative processes for resolving disputes by giving the agency authority to levy penalties against repeat offenders. Nevertheless, this discussion is instructive for our purposes in that it demonstrates the legislature's intent to give the agency teeth to resolve the majority of wage disputes and to encourage an employer who had erroneously underpaid an employee "to conduct a self-audit to correct similar wage payment problems involving other employees." *See* Drafting Record of 1993 Act 86, *DILHR Reforms the Process: Working Smarter and Better in Labor Standards,* at 1–2, available at Legislative Reference Bureau, Madison, WI.

tory penalties available depending on the DWD's involvement signals a strong legislative preference for administrative resolution of wage disputes and the concomitant objectives that underlie administrative law generally: expedient, economical, and specialized resolution of disputes.

¶ 28.  From our inquiry into statutory history and purpose, we conclude that Wis. Stat. § 109.11(2)(b) is the culmination of two mutually reinforcing principles that the legislature sought to balance: encouraging the prompt payment of wages and encouraging use of the DWD to decrease the burden of costly litigation. We proceed by considering, in light of these principles, which of the two competing interpretations of § 109.11(2)(b) forwarded by the parties best promotes these legislative objectives.

¶ 29.  The employee primarily relies on the principle that the legislature intended wages to be paid promptly and that the statute should be construed to maximize employers' rapid payment of wages. In order to achieve this end, the employee maintains that despite any settlement of the wage claim and payment in full, employees sustain a cause of action for civil penalties and attorney fees.

¶ 30.  The employee's contention is that if civil penalties under Wis. Stat. § 109.11(2)(b) apply only to wages due when a circuit court action commences, then employers could fail or refuse to pay wages at the statutory deadline for the payment of wages. Payment could be prolonged for several years and employers could avoid civil penalties so long as they paid the overdue wages at least one day before a circuit court action commenced.

¶ 31.  Moreover, the employee asserts that interpreting Wis. Stat. § 109.11(2)(b) to deny a cause of

action for civil penalties to employers who receive a full settlement of all overdue wages forces financially distressed employees into a Hobson's choice: employees must either cash the check, get badly needed funds and lose the civil penalties under § 109.11(2)(b) or wait for the payment of wages and retain the possibility of civil penalties.

¶ 32. The employee argues that the employer's interpretation of Wis. Stat. § 109.11(2)(b) to encompass only wages due and unpaid at the commencement of a civil action does not account for the fact that employees have lost the use of the unpaid wages and have incurred the hardships that come from an inability to pay bills as they become due.[18]

---

[18] The employee also argues that the decision of the court of appeals in this case is in direct conflict with prior decisions of this court as well as the court of appeals. For this proposition, the employee cites two cases, *American Federation of State, County and Municipal Employees Local 1901 v. Brown County,* 146 Wis. 2d 728, 432 N.W.2d 571 (1988), and *Kenosha Fire Fighters, Local Union No. 414 v. City of Kenosha,* 168 Wis. 2d 658, 484 N.W.2d 152 (Ct. App. 1992), arguing that both of them stand for the principle that chapter 109 requires the imposition of civil penalties, regardless of the reason, for any delay greater than 31 days in paying retroactive wages and that an action can be commenced solely for the payment of back wages. We find these cases inapposite for two reasons. First, both cases predate the 1993 amendment to 109.11(2) that shifted away from mandatory imposition of penalty wages after the statutory deadline to pay wages expired. These cases, therefore, cannot stand for the proposition that the phrase "wages due and unpaid" in the current statute means any delay greater than 31 days. Second, the cases cited by the employee do not directly address whether an action to recover penalty wages could be maintained after the wages were paid because in *Kenosha Fire Fighters* it was determined that wages were not due, *see* 168 Wis. 2d at 665, and in *Employees Local 1901* the court deter-

¶ 33. Although we agree that the employee's interpretation could ostensibly provide the maximum deterrent effect on unscrupulous employers who wrongfully withhold wages, we are concerned that if we interpret Wis. Stat. § 109.11(2)(b) as the employee proposes, we might unintentionally create an incentive for employers not to pay wages in a timely manner.

¶ 34. Specifically, under the employee's proposed interpretation, employers would have little incentive to settle wage claims promptly if they knew employees maintained a cause of action for civil penalties regardless of whether the underlying claims were fully settled. Thus employers might delay payment to employees on the theory that employers will be liable for statutory penalties regardless of whether they settle a wage claim promptly.

¶ 35. Furthermore, as one of the amici in this case points out, the employee's argument presupposes that employers could correctly predict the day on which employees would file suit so that employers could satisfy the claim before the initiation of an action.[19] The fact that an employee is free to file an action at any time encourages the employer to pay promptly.

¶ 36. The employer further argues that the existing criminal penalties will provide a sufficient deterrent to discourage late payment of wages. Wisconsin Stat. § 109.11(3) provides criminal penalties for employers who fail to pay wages due and payable or who falsely deny the amount or validity of the wages with criminal intent, even though they may not be subject to civil

mined that good cause justified the delay in payment and that the provisions of chapter 109 were not controlling of the facts in the case, *see* 146 Wis. 2d at 739.

[19] Brief of Amicus Curiae Wisconsin Manufacturers & Commerce at 14.

penalties. Thus, the employer asserts that even without providing employees the ability to recover civil penalties when, at the time an action is commenced in circuit court, all wages have been paid, the criminal penalties are a significant incentive for employers to pay wages promptly because of the potential costs and stigma of criminal liability.

¶ 37.  Criminal penalties may not, however, be a significant incentive for employers to pay wages promptly. Criminal intent may be hard to prove without a pattern of conduct on the part of the employer. Furthermore, criminal penalties do not assist employees by providing them with additional funds to compensate them for delays in payment of wages and expenses of seeking payment. The employee therefore contends that employers will be deterred from late payment of wages only when employees can recover civil penalties and the costs they incur in recovering wage payments from employers.[20] According to the employer, however, this rationale is not persuasive because employees do not incur significant costs in filing an administrative complaint with the DWD and civil penalties make little sense when used to penalize employers before employees have had to bear the financial burden resulting from the commencement of litigation.

¶ 38.  The employee responds by predicting that adoption of the employer's interpretation will undermine the goal of administrative settlement of disputes because it will encourage employees to sidestep the DWD and engage in a "race to the courthouse." He argues that if employees are barred from access to the

---

[20] *See Employees Local 1901,* 146 Wis. 2d at 735 ("The purpose of the ch. 109 penalties is to recover the costs incurred by the employee(s) in recovering the wage payments from the employer.").

court once overdue wages are paid, even if they are paid well after the deadline set by chapter 109, attorneys for employees are likely to file wage claim actions in circuit court immediately to avoid the loss of their clients' rights to recover the civil penalty under Wis. Stat. § 109.11(2)(b) and a reasonable sum for expenses under § 109.03(6).[21]

¶ 39. We agree that under the employer's interpretation employees have the option of bypassing the DWD and going to the courts first in order to preserve the possibility of recovering civil penalties and expenses. In conceding this possibility, however, we do little more than recognize the language of § 109.11(2)(b) itself, which provides employees with an option of bypassing the administrative forum. The employer's interpretation will not necessarily result in a net increase in court traffic because the expense and potential delays in pursuing litigation and the uncertainty of a circuit court's willingness to exercise its discretion in granting civil penalties will encourage many employees to first utilize the DWD when pursuing wage claims.

¶ 40. Going to court is problematic. A circuit court ultimately has discretion to award few or no civil penalties or expenses. If the wage dispute was the result of an honest misunderstanding, a mistake, or a reasonable dispute, a circuit court might very well not award civil penalties or expenses to an employee who rushes into court and bypasses the alternative dispute resolu-

---

[21] Wisconsin Stat. § 109.03(6) provides:

In an action by an employee . . . against the employer on a wage claim . . . the court may allow the prevailing party, in addition to all other costs, a reasonable sum for expenses.

tion the legislature provided through the DWD. Avoidance of the DWD presents a precarious path for employees.

¶ 41. We recognize and are extremely concerned by the possibility that an employee may be placed in a difficult financial position as a result of an employer's refusal to pay wages in a timely fashion. However, as we have stated above, our concern must be tempered by the reality that employers should be able to rely on the agreed-upon settlement of wage disputes. Indeed, when an employee has already fully recovered wages through the administrative processes of the DWD we are less fearful that the employee will be placed in a financially vulnerable position.

¶ 42. After considering these arguments, we conclude that the interpretation that civil penalties are available only when wages are unpaid at the commencement of a circuit court action will hasten resolution of these disputes and, therefore, leave employees in a better position overall. While we appreciate that both the employer and the employee have proposed feasible interpretations of the statute,[22] we are ultimately required to interpret the statute in a way that is consistent with the language, context, statutory history, and legislative goals underlying the statute. We are con-

___

[22] The employee proposes a third possible interpretation of Wis. Stat. § 109.11(2)(b): The statutory phrase "wages due and unpaid" refers to wages unpaid when a circuit court enters judgment. This interpretation is least favored because it would not encourage the prompt payment of wages and would not eliminate the burden on an employee to engage in costly litigation. Such an interpretation would allow employers to delay until the very last moment to pay employees wages and would not reimburse employees for their inconveniences and difficulties in litigating wage claims.

vinced that the interpretation forwarded by the employer and the court of appeals will more fully effectuate the legislature's important goals of encouraging the rapid and final resolution of wage disputes outside the courts and in the DWD. In light of these goals, we are persuaded that in order for an employee to recover civil penalties, wages must remain due and unpaid at the time a wage claim action commences in circuit court. This interpretation best balances the legislature's goals by encouraging employers to pay wages promptly, facilitating the rapid administrative disposition of disputes, and bringing finality to settlements brokered by the parties on their own or in the administrative process.

¶ 43. Accordingly, we hold that Wis. Stat. § 109.11(2)(b) does not impose a civil penalty when wages due to an employee have been fully paid at the time a circuit court action is commenced.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 44. PATIENCE D. ROGGENSACK, J. (*concurring*). I agree with the conclusions reached in the majority opinion. However, I write separately to point out that the majority opinion's statutory analysis of Wis. Stat. § 109.03(1) is a departure from that which has been this court's mode of statutory analysis and that it is not one that the court has discussed and decided to adopt.

¶ 45. Our jurisprudence has repeatedly explained that the interpretation of a statute is a question of law that we review de novo. *State ex rel. Angela M.W. v. Kruzicki,* 209 Wis. 2d 112, 121, 561 N.W.2d 729 (1997); *Stockbridge Sch. Dist. v. DPI,* 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996). Our goal in statutory interpretation is to ascertain and give effect to the legislature's intent.

*Angela M.W.*, 209 Wis. 2d at 121; *Ball v. Dist. No. 4 Area Bd. of Vocational, Technical and Adult Educ.*, 117 Wis. 2d 529, 537–38, 345 N.W.2d 389 (1984). We begin our interpretation with the language the legislature has chosen to use in the statute. *Angela M.W.*, 209 Wis. 2d at 121. We give that language its plain and ordinary meaning. *Id.* at 121; *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656. If the language is clear on its face, we need go no further and we simply apply it. *Bruno*, 260 Wis. 2d 633, ¶ 20. As a general rule we do not review extrinsic sources unless there is an ambiguity in the statute. However, if the language is ambiguous, we consult the "scope, history, context, subject matter and object of the statute" in order to ascertain legislative intent. *Ball*, 117 Wis. 2d at 537–38. A statute is ambiguous if it is susceptible to two or more reasonable interpretations. *Angela M.W.*, 209 Wis. 2d at 121.

¶ 46.   The majority opinion employs the analytic framework for a statute that is ambiguous, while purposely not analyzing whether Wis. Stat. § 109.03(1) is ambiguous. This is a change in our traditional analysis, which is set out above. I offer no opinion about whether our mode of statutory analysis ought to be changed. However, when we change the statutory analysis in a majority opinion without explaining that the majority of the court has not decided to change its analysis, we lead our readers to conclude that we have changed. This can cause confusion among those we write to assist and make our opinions less useful to the public. Accordingly, I respectfully concur.

113

¶ 47.    I am authorized to state that Justices JON P. WILCOX and N. PATRICK CROOKS join this concurrence.